## No. 22-1496

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

### UNITED STATES OF AMERICA,

### v.

### TORON CROCKER,
### Defendant-Appellant

### On Appeal from Judgment of Conviction and Sentence
### in the United States District Court for the District Of Delaware
### No. 1-17-cr-00010-001 (Leonard P. Stark, J.)

## BRIEF FOR APPELLANT

*ROCCO C. CIPPARONE, JR., ESQUIRE*
**Law Offices of Rocco C. Cipparone, Jr.**
**205 Black Horse Pike**
**Haddon Heights, NJ 08035**
**(856) 547-2100**
**Fax: (856) 547-2225**
**www.CipparoneLaw.com**

*Counsel for Appellant*

# **TABLE OF CONTENTS**

STATEMENT OF JURISDICTION ................................................................... 1

STATEMENT OF ISSUES WITH PLACE RAISED AND RULED ON ........... 1

RELATED CASES ......................................................................................... 1

STATEMENT OF THE CASE ........................................................................ 2

SUMMARY OF ARGUMENT ...................................................................... 14

ARGUMENT .................................................................................................15

   I. The District Court Erred by Failing Personally to Advise
   Appellant that as a Result of His Guilty Plea Appellant
   Would be Required to Register as a Sex Offender as a
   Mandatory Condition of Supervised Release and to Ensure
   Appellant Understood that Consequence of his Guilty Plea ...............15

   II. The District Court's Sentence is Unreasonable ................................. 29

CONCLUSION .............................................................................................. 36

REQUIRED CERTIFICATIONS ................................................................. 37

CERTIFICATE OF SERVICE ...................................................................... 38

# **TABLE OF AUTHORITIES**

## **CASES**

*Boykin v. Alabama*, 395 U.S. 238 (1969).............................................. 26, 27

*Government of Virgin Islands v. George*, 741 F.2d 643 (3d Cir. 1984) 25, 26

*Lutz v. City of York*, 899 F.2d 255 (3d Cir. 1990) ................................. 20, 27

*Maldonado v. Houstoun*, 157 F.3d 179 (3d Cir. 1998) ................................ 27

*Piasecki v. Court of Common Pleas*, 917 F.3d 161 (3d Cir. 2019) ....16, 17, 18,

19, 20, 27, 29

*U.S. v. Cleary*, 46 F.3d 307 (3d Cir. 1995) ........................................... 25, 26

*U.S. v. Goodson*, 544 F.3d 529 (3d Cir. 2008) ....................................7, 15, 24

*U.S. v. Keller*, 594 F.2d 939 (3d Cir. 1979)........................................... 23, 29

*U.S. v. Khattak*, 273 F.3d 557 (3d Cir. 2001) ................................................ 7

*U.S. v. Schweitzer*, 454 F.3d 197 (3d Cir. 2006) ................................... 23, 27

*U.S. v. Tomko*, 562 F.3d 558 (3d Cir. 2009) ....................................29, 31, 32

*U.S. v. Zudick*, 523 F.2d 848 (3d Cir. 1975) ................................................. 5

*United States v. Gray*, 611 F.2d 194 (7th Cir. 1979) .................................... 26

*Virgin Islands v. Greenaway*, 379 F. App'x 247 (3d Cir. 2010) ........... 27, 28

*Woodward v. U.S.*, 426 F.2d 959 (3d Cir. 1970)......................................... 22

## STATUTES

18 U.S.C. § 2251 ...............................................................20

18 U.S.C. § 3231 ............................................................... 1

18 U.S.C. § 3583 ........................................................... 8, 14

18 U.S.C. § 3742 ............................................................... 1

28 U.S.C. § 1291 ............................................................... 1

34 U.S.C. § 20913 .......................................................18, 19

34 U.S.C. § 20918 .......................................................18, 20

Del. Code tit. 11 § 4120 .............................................. 20, 21

Del. Code tit. 11 § 4121 ...................................................20

Fla. Stat. § 775.21............................................................ 21

## RULES

Fed. R. Crim. P. 11............................................. 4, 6, 8, 9, 14, 15, 22

LAR 30.3 ........................................................................3

## OTHER AUTHORITIES

https://www.ussc.gov/research/data-reports/geography/2021-federal-
   sentencing-statistics ................................................. 33

SORNA Substantial Implementation Review State of Delaware — Revised
   (May 2019), U.S. Department of Justice (available for .pdf download at
   https://smart.ojp.gov/redirect-legacy/pdfs/sorna/Delaware-Revised.pdf)
   ........................................................................26

## STATEMENT OF JURISDICTION

Subject Matter Jurisdiction: 18 U.S.C. § 3231. Appellate jurisdiction: 28 U.S.C. § 1291; 18 U.S.C. § 3742 (a)(1). Judgment was entered March 10, 2022. A.002 (DDE126). Timely Notice of Appeal was filed March 17, 2022. A.1.

## STATEMENT OF ISSUES WITH PLACE RAISED AND RULED ON

**I.**  Did the District Court Erred by Failing Personally to Advise Appellant that as a Result of His Guilty Plea Appellant Would be Required to Register as a Sex Offender as a Mandatory Condition of Supervised Release and to Ensure Appellant Understood that Consequence of his Guilty Plea?

This issue was not raised in the District Court.

**II.**  Is the District Court's Sentence Unreasonable?

Raised and ruled on: Appellant asked for a 15-year sentence which would have been a variance from the applicable guideline range. A.028-35. The District Court declined any variance and sentenced Appellant to 360 months (30 years) imprisonment. A.048 -58.

## RELATED CASES

None.

## <u>STATEMENT OF THE CASE</u>

<u>Relevant Facts</u>

Appellant was approached by FBI agents on February 8, 2017, and was interrogated. He spoke with the agents. After the interrogation, Appellant was arrested and was charged by Criminal Complaint with violation of 18 U.S.C. §§ 2251(a) & (e), production of child pornography. (DDE2, Criminal Complaint).

The Federal Public Defender was appointed to represent Appellant on the same date, at Appellant's initial appearance. A.085 (DDE3). On February 15, 2017, an Indictment was returned by a federal grand jury charging Appellant in one count with the same crime in violation of 18 U.S.C. §§ 2251(a) & (e). A.085 (DDE7, Indictment). On January 16, 2019, the Court granted a motion of the Federal Public Defender to withdraw as counsel for Appellant (DDE41), and on February 5, 2019 appointed substitute counsel pursuant to the Criminal Justice Act A.087 (Oral Order on docket – no number assigned – between DDE42 and DDE43).

On September 16, 2019, Appellant's counsel filed omnibus pretrial motions and a brief in support, which included a motion to suppress Appellant's statements made during the above-referenced FBI interview, as well as seeking other relief. A.087 (DDE50). The District Court held an

evidentiary hearing on the suppression motion on January 7, 2020, at which one of the two interrogating officers of Appellant on February 8, 2017 testified on direct examination by the government and cross-examination by Appellant's trial counsel. *See* 01-07-20 NT5-95 (testimony by FBI Agent).[1] On September 1, 2020, the District Court filed an Order and Opinion denying Appellant's motion to suppress his statements. (DDE66 and 67).

On September 10, 2020, a superseding Indictment was returned by a federal grand jury charging Appellant as follows:

- Count One: production of child pornography regarding Minor A, in violation of 18 U.S.C. §§ 2251(a) & (e);

- Count Two: production of child pornography regarding Minor B, in violation of 18 U.S.C. §§ 2251(a) & (e);

- Count Three: possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), 2256(2)(A), and 2256(8)(A).

A.092 (Superseding Indictment). On September 15, 2021, the District

---

[1] Referenced transcript portions are not included in the Appendix if referenced for factual background and not necessary for understanding the issues presented. LAR 30.3.

Court conducted a pretrial conference and argument regarding various motions *in limine* filed by the parties. *See* 09-15-21 NT. The ruling on those motions was entered on September 21, 2021. (DDE90).

 Jury selection occurred October 12, 2021. Just before jury selection, Appellant requested to represent himself. After colloquy the Court permitted Appellant to do so. After jury selection, acting *pro* se, Appellant determined to plead guilty. Appellant, acting *pro* se (with standby counsel) entered a plea agreement and guilty plea after the jury was selected but before opening statements. A.061 (Transcript of Change of Plea hearing).

Appellant pled guilty to Count 1 of the Superseding Indictment (production of child pornography), a violation of 18 U.S.C. §§ 2251(a) & (e), pursuant to a plea agreement. A.096 (Memorandum of Plea Agreement). The plea agreement was <u>not</u> a conditional one pursuant to FED. R. CRIM. P. 11(a)(2). It included no provision permitting appeal regarding any motion ruling, including the District Court's denial of Appellant's suppression motion which motion addressed Appellant's rights of constitutional magnitude.[2] *See U.S. v. Zudick*, 523 F.2d 848 (3d Cir.

---

[2] Therefore, this appeal does not raise any challenge to the Court's decision denying Appellant's motion to suppress his statement to the FBI. *See* DDE50, 55, 61, 62, 66,67 (pleadings and resulting Order and Memorandum Opinion).

1975).

Before accepting the guilty plea, the District Court placed Appellant under oath. The plea agreement was summarized on the record by the prosecutor prior to the entry of Appellant's guilty plea. A.067-69. During the colloquy with the District Court, the Court inquired if Appellant he had reviewed the indictment, signed the plea agreement, and reviewed the plea agreement and its terms before he signed it. Appellant responded affirmatively. A.066. **However, the District Court never asked Appellant if he understood the plea agreement and each of its terms**. After the prosecutor summarized the plea agreement, Appellant confirmed to the District Court that the summary by the prosecutor accurately reflected the agreement. A.069.

During the colloquy, the District Court advised Appellant:

(A) that if Appellant did not answer questions truthfully, he could be prosecuted for perjury or false statement (A.063-64);

(B) that Appellant had the right to plead not guilty, and specifically to persist in his not guilty plea (A.077);

(C) that Appellant had the right to a jury trial (A.077);

(D) that Appellant had the right to be represented by counsel (or the right to represent himself, as he had already elected to proceed

*pro se* as outlined *supra*) at trial (A.077). The Court **did not** advise that such representation right existed at "every other stage of the proceeding". FED. R. CRIM. P. 11(b)(1)(D).

(E) that Appellant had the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify (if he chose to do so voluntarily), and to compel the attendance of witnesses (A.077);

(F) that by pleading guilty the Appellant would be waiving his trial rights (A.077-78)[3];

(G) the nature of each charge to which Appellant pled guilty (A.078-79, advising Appellant of essential elements of charge). The District Court also confirmed that Appellant had reviewed the Indictment. A.066.

(H) the maximum penalty including imprisonment, fine and supervised release term (A.071-72; A.077);

(I) the mandatory minimum 15-year penalty applicable (A.072; A.074);

(J) any applicable forfeiture (A.077);

---

[3] Indeed, as the jury already had been selected, the District Court specifically advised Appellant that if Appellant pled guilty and the Court accepted it, the jurors would be discharged and there would never be a trial on the count to which he was pleading guilty. A.078.

(K) the court's authority to order restitution (A.069; A.072; A.077)

(L) the court's obligation to impose a special assessment (A.069; A.072; A.077);

(M) that in determining a sentence, the court's is obligated to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. §3553(a) (A.073-74)[4];

(N) the terms of the plea agreement provision waiving certain of Appellant's rights to appeal or to collaterally attack the sentence (A.074-76).[5]

(O) The District Court did not address with Appellant potential

---

[4] The District Court also advised Appellant that a presentence investigation report would be prepared, and Appellant would have the chance to review and challenge it. A.073.

[5] The waiver provision is a contractual one. Although the government may do so in response to this briefing, at present this appeal is not barred. *Goodson*, 544 F.3d 529, 533-37 (3d Cir. 2008) (an appellate waiver "has no bearing on an appeal if the government does not invoke its terms."). In the event the government seeks to invoke the waiver, Appellant contends that the issues raised in this brief are of such magnitude that the waiver of appeal should not be enforced because it would cause a miscarriage of justice. *U.S. v. Khattak*, 273 F.3d 557, 559 (3d Cir. 2001)("We hold that waivers of appeals are generally permissible if entered into knowingly and voluntarily, unless they work a miscarriage of justice.").

immigration consequences such as removal from the United States, denial of citizenship, and denial of admission to the United States in the future. FED. R. CRIM. P. 11(b)(1)(O). However, Appellant is a United States Citizen. PSR at 2.

The District Court advised Appellant of certain potential collateral consequences of his impending guilty plea including that it is a felony offense, and he could lose civil rights including the right to vote, to hold public office, to serve on a jury and to possess any kind of firearm or ammunition. A.072. The District Court **did not** advise Appellant during the plea colloquy of a mandatory and direct consequence of his guilty plea: that upon release from imprisonment Appellant would be required pursuant to 18 U.S.C. § 3583 to register as a sex offender[6], or that the Court would impose a mandatory condition of supervised release that (as the Court did impose at sentencing) Appellant "must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where

---

[6] The plea agreement did contain reference to sex offender registration (A.101-02), and the prosecutor very cursorily referred during the plea colloquy to those requirements being contained in the plea agreement. A.069.

you reside, work, are a student, or were convicted of a qualifying offense." A.004.

The District Court advised Appellant that if he wanted to proceed to trial, the government would be required to prove to the jury beyond a reasonable doubt each essential element of the crimes charged, and the jury would have to unanimously agree to find him guilty. A.078.

As required by FED. R. CRIM. P. 11(b)(2), the District Court addressed the voluntariness of the plea by addressing Appellant personally in open court and determining that the plea was voluntary and did not result from force, threats, or promises (other than the plea agreement). A.070; A.079-80; A.082. As required by FED. R. CRIM. P. 11(3), the District Court determined that there was a factual basis for the plea after Appellant set forth in his own words what he did, and Appellant agreed with the prosecutor's factual basis summary, which established the relevant essential elements of the crime. A.080-81.

As to competency, the District Court inquired, and Appellant responded that:

- he was age 36;

- had obtained his GED;

- spoke and understood the English language;

- had been treated for, but no longer was in treatment for, mental illness or addiction to alcohol or drugs, and the last treatment was about 5 years prior;

- he was not under the influence of alcohol, drugs, or medication, and

- he understood what was occurring in court.

A.064-66.

After the foregoing took place, the District Court found that Appellant was "fully competent and capable of entering an informed plea, that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the elements, the essential elements of the offense" and accepted Appellant's guilty plea. A.081-82.

The Presentence Report (PSR) established a sentencing guideline total offense level 45, molded to level 43 because the guideline range otherwise exceeded the statutory maximum for the crime to which Appellant pled guilty. PSR ¶¶ 52-77. Appellant's Criminal History Category was determined to be Category III. PSR ¶¶ 78-84. The applicable guideline range was found to be life imprisonment before application of the 30-year statutory maximum sentence, thereby resulting in a guideline term of imprisonment of 360 months (30 years). PSR ¶ 132. Appellant (acting *pro*

*se* at the time) had made no objections to the PSR. PSR Addendum.

On the day of sentencing Appellant (*pro se*) advised that he indeed had objections to the PSR, but he had not written them down anywhere and did not have them with him, and had been in lockdown at the jail and was unable to contact the Court. A.011-12. Appellant acknowledged that because of that situation (at Appellant's request) his standby counsel had obtained a continuance of the sentencing date from the Court. Appellant contended that the additional time granted to the date of sentencing still had not been enough for Appellant to prepare his objections. Appellant requested a 30-day continuance of his sentencing. A.012-013. As the victim's family members were present and prepared to speak, and because Judge Stark was being elevated to another Court, the District Court (Judge Stark) denied the extension because it would be an improvident waste of resources to require another judge to become familiar with and review the video and other materials already reviewed by Judge Stark in connection with the case and preparation for sentencing, because the District Court found that Appellant already had adequate time to prepare for sentencing, because of inconvenience to the victim's family members who were present at sentencing, and because continuance would not be in the interests of justice. Appellant then asked that standby counsel be reappointed as his

attorney for sentencing. The District Court reappointed counsel and granted an adjournment of about an hour and forty minutes for counsel to confer with Appellant about any objections to the PSR which Appellant believed should be put forth. A.013-21.

After conferring, Appellant and his re-appointed counsel appeared for sentencing and the Court reconvened. Appellant's counsel stated that he had adequate time to confer with Appellant. A.022-23. Appellant again acknowledged that he read the PSR. A.023.

Appellant's counsel advised the Court that there were no guideline objections, and only two factual notations needed to the PSR. The District Court ruled to accept those factual notations and directed the Probation Department to amend the PSR in accordance with the requested changes by Appellant. A.024-26.

The Court provided Appellant's counsel an opportunity to speak (which counsel did) and addressed Appellant personally to permit Appellant to speak or present any information to mitigate the sentence (which Appellant did). A.028-039. Appellant's counsel requested a sentence of 15 years (which would have been a variance from the guideline range of 30 years) and addressed various factors in support thereof. A.028-35.

The District Court made various findings. It found that, consistent with the PSR, the offense level was 43, the Criminal History Category was III, and the guideline range was life imprisonment, constricted by the statutory maximum of 30 years and the statutory minimum of 15 years. A.027 (NT19). In imposing sentence, the District Court addressed the requisite factors under 18 U.S.C. § 3553(a), but some in a hastier way than others. A048-57. The Court acknowledged its obligation to impose a sufficient but not greater than necessary sentence to achieve the sentencing purposes. A.049. The Court stated that it considered the request for variance. A.056.

The Court imposed a sentence at the top of the guideline "range": 360 months (30 years) imprisonment, 10 years supervised release with various conditions including a mandatory condition that Appellant "must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where ... [Appellant would] reside, work, [is]... a student, or [was]... convicted of a qualifying offense." A.004.

The Court advised Appellant of his right to file an appeal within 14 days of the judgment. A.058-59. The Court dismissed Counts Two and

Three of the superseding Indictment consistent with the plea agreement. A.059.

## **SUMMARY OF ARGUMENT**

**I.**    The District Court did not advise Appellant that upon release from imprisonment, Appellant would be required to register as a sex offender as a mandatory condition of the Court's imposed supervised release. The District Court did not itself personally address Appellant regarding the sex offender registration requirements, as is required by Rule 11. That imposed special condition of supervised release will have the effect of keeping Appellant "in custody" and is a direct consequence of Appellant's conviction. That provision of Appellant's sentence is a direct (not a collateral) consequence of Appellant's guilty plea about which the District Court had an obligation to warn and to ensure Appellant understood such. The District Court should have advised appellant of such pursuant to FED. R. CRIM. P. 11(b)(1)(H) and constitutionally. The failure to do so was plain error and requires that Appellant be permitted an opportunity to withdraw his guilty plea.

**II.** The imposition of a 360-month sentence – which also was the statutory maximum of 30 years - was substantively unreasonable.

Appellant's sentence should be vacated, and the matter remanded for resentencing.

## ARGUMENT

**I.  The District Court Erred by Failing Personally to Advise Appellant that as a Result of His Guilty Plea Appellant Would be Required to Register as a Sex Offender as a Mandatory Condition of Supervised Release and to Ensure Appellant Understood that Consequence of his Guilty Plea**

<u>Standard or Scope of Review</u>. Because Appellant (acting *pro* se at the time of his guilty plea) did not object to the Rule 11 error, the plain error standard applies. *U.S. v. Goodson*, 544 F.3d 529, 539 (3d Cir. 2008).

## Discussion

The District Court did not personally address Appellant regarding the sex offender registration requirements, as required by Rule 11. The Court nonetheless imposed a special condition of supervised release will have the effect of keeping Appellant "in custody" and is a direct consequence of Appellant's conviction. The District Court should have advised appellant of such pursuant to Fed. R. Crim. P. 11(b)(1)(H). The failure to do so was plain error of constitutional magnitude requiring that Appellant be given the opportunity to withdraw his guilty plea.

Appellant was sentenced to a 10-year term of supervised release. The

Court imposed a mandatory supervised release condition that Appellant "must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense." A.004. That provision of Appellant's sentence is a direct (not a collateral) consequence of Appellant's guilty plea about which the District Court had an obligation to warn and to ensure Appellant understood such. The Third Circuit in another context has recognized that sex offender registration requirements are a <u>direct consequence</u> of conviction of a sex offense – as was Appellant's conviction – not a collateral consequence:

> We recognize that several of our sister circuit courts of appeals have found that various sex offender registration schemes were not sufficiently restrictive to constitute "custody." **As we explain below, many courts have held that registration requirements cannot support habeas jurisdiction because they were collateral consequences of a conviction that were not imposed pursuant to the judgment of a state court**. Others have held that sex-offender registration conditions do not impose a severe restriction on an individual's freedom. **We do not find those cases compelling....**

*Piasecki v. Court of Common Pleas*, 917 F.3d 161, 172 (3d Cir. 2019). The

Court went on to evaluate whether Piasecki's sex offender registration and compliance requirements were a collateral consequence of his child pornography conviction, or a direct consequence of the conviction and sentence. *Piasecki*, 917 F.3d at 173. Because Piasecki's sentence required registration for 10 years[7], because they were part of the judgment of sentence[8], because they severely restricted his freedom of movement and subjected him to prosecution for a crime if he failed to comply[9] (*Piasecki*, 917 F.3d at 171), "Piasecki became subject to SORNA's registration requirements as a "**direct consequence** of [the] conviction" being challenged." *Piasecki*, 917 F.3d at 176 (bold added).

For the same reasons, the sex offender registration and other requirements imposed upon Appellant pursuant to the Judgment here (and by operation of SORNA and each SORNA compliant State's laws) are <u>direct</u> consequences of his conviction. Appellant will be subject to the imposed mandatory condition of supervised release for a lengthy period after his

---

[7] *Piasecki*, 917 F.3d at 173.

[8] *Piasecki*, 917 F.3d at 175.

[9] *Piasecki*, 917 F.3d at 171.

release from incarceration – the same 10 years as was defendant Piasecki[10].

As in *Piasecki[11]*, the registration and other requirements imposed on

Appellant are part of the judgment of sentence. A.004. Also as in *Piasecki*,

those conditions severely will restrict Appellant's freedom, including his

freedom of movement. *See Piasecki,* 917 F.3d at 170-73. SORNA itself

requires:

- "not later than 3 business days after **each** change of

  name, residence, employment, or student status, appear

  in person in at least 1 jurisdiction involved ... and inform

  that jurisdiction of all changes in the information

  required for that offender in the sex offender registry."

  34 U.S.C. § 20913 (bold added);

- depending on the tier assigned to the offender, Appellant

  will have to register either every 3, 6 or 12 months. 34

  U.S.C. § 20918;

- Appellant to register (for initial registration) at a

---

[10] *Piasecki*, 917 F.3d at 173.

[11] *Piasecki*, 917 F.3d at 175.

minimum in Delaware (the state in which he was

convicted), and any jurisdiction in which he resides if

other than Delaware. 34 U.S.C. § 20913(a).

The condition imposed on Appellant also mandates he comply with

the sex offender registration requirements in multiple locations, which can

be in different states, further restricting his freedom of movement. The

impact of the mandatory condition of supervised release on Appellant is not

a collateral consequence but is a direct result of his conviction. Appellant is

required by the Judgment here to register in any location where he resides,

works, is a student, or was convicted of a qualifying offense (Delaware).

A.004. Just like the basis on which the Court in *Piasecki* held that the

defendant was still "in custody" for purposes of habeas jurisdiction because

his freedom of movement was so restricted, here Appellant is subject to the

following per the mandatory condition of supervised release imposed by the

District Court's sentence:

- every time Appellant changes his name, residence,

  employment, or school attended must report **in person**

within 3 business days of the change, in state[12] or even if Appellant moved to another state (in which he also would have to register). Del. Code tit. 11 § 4120(f)(2), (f)(4) and(f) (5). *See also* 34 U.S.C. § 20918;

- Appellant likely will be designated a Tier II offender[13], and as such in Delaware "[a] Tier II offender shall appear **in person** at locations designated by the Superintendent of the Delaware State Police to verify all registry information **every 6 months** unless relieved of registration obligations." Del. Code tit. 11 § 4120(g)(2)(bold added). *See Piasecki*, 917 F.3d at 164 (Piasecki required to appear at PA State Police every 3 months).

- Every time Appellant would want to travel outside the United States, like the defendant in *Piasecki*, 917 F.3d at 165, he

---

[12] These requirements also implicate Appellant's constitutional intrastate travel rights. *Lutz v. City of York*, 899 F.2d 255, 256 (3d Cir. 1990) ("The appeal implicates an important and largely unexplained area of constitutional jurisprudence — whether there exists an unenumerated constitutional right of *intra* state travel. We conclude that such a right exists, and grows out of substantive due process.")

[13] Del. Code tit. 11 § 4121(d)(2)(b) (person convicted under 18 U.S.C. § 2251 is  Tier II).

would have to notify the Delaware authorities at least 21 days in advance of travel, and various notifications will issue per SORNA. *See* Del. Code tit. 11 § 4120. *See also* SORNA Substantial Implementation Review State of Delaware — Revised (May 2019), U.S. Department of Justice (available for .pdf download at https://smart.ojp.gov/redirect-legacy/pdfs/sorna/Delaware-Revised.pdf).

By way of further example, if Appellant was residing in Delaware and wanted to take even a three-day vacation to or visit a relative in Florida, he also would be required to resister in Florida as a sex offender. Florida requires registration by a convicted sex offender who establishes a "temporary residence" in Florida, which is defined as "a place where the person abides, lodges, or resides, including, but not limited to, vacation, business, or personal travel destinations in or out of this state, for a period of 3 or more days in the aggregate during any calendar year." Fla. Stat. § 775.21.

Because Appellant's mandatory condition of supervised release requirement is a direct consequence of Appellant's conviction in the instant case, the District Court was required personally to warn him of such and to confirm his understanding of such consequence during the

Rule 11 colloquy. It failed to do so.

During the Rule 11 colloquy, the prosecutor referred cursorily to those requirements being contained in the plea agreement, stating only that "Paragraphs 13 and 14 [of the plea agreement] go over the sex offender registration requirements." A.069. That oral recitation did not advise the then *pro* se Appellant that the sex offender registration requirements were mandatory statutorily, or that they would be part of the sentence imposed as a mandatory condition of supervised release. For two reasons, the prosecutor's delegated summary is not enough to satisfy the requirements of Rule 11.

First, a District Court cannot delegate to the prosecutor the court's responsibility to personally address a defendant pursuant to Rule 11(b)(1). *See Woodward v. U.S.*, 426 F.2d 959, 963 (3d Cir. 1970) ("Because Rule 11 requires that the court address the defendant personally, questioning by the United States Attorney or representation of the defendant by counsel will not discharge the court's duty to interrogate the defendant itself."). It is the District Court's obligation under Rule 11 and constitutionally to "ensure that the defendant receives these [Rule 11 warnings including the maximum and minimum penalties], understands them, and still wishes of his or her own volition to plead guilty." *U.S. v. Schweitzer*, 454 F.3d 197, 203 (3d Cir.

2006).

Second, even if the Court can delegate the responsibility of "personally" advising a defendant of the maximum and mandatory penalties at the time of plea colloquy, the recitation by the prosecutor here was insufficient. The mere recitation that the plea agreement addressed sex offender registration requirements did not present what were those requirements. Neither the Court nor the prosecutor personally confirmed that the Appellant understood the sex offender registration requirements and restrictions that such would impose on him, or whether Appellant understood that they would be a mandatory part of the Court's sentence. Unlike with the appellate waiver provisions of the plea agreement (which the District Court read in detail to the then *pro se* Appellant during the plea colloquy), neither the District Court nor the prosecutor read to Appellant the provisions of paragraph 13 of the plea agreement. *United States v. Keller*, 594 F.2d 939, 943 (3d Cir. 1979) ("Generally, a guilty plea may be withdrawn where the judge has delegated to the U.S. Attorney the duty to inform the defendant, prior to the Rule 11 colloquy, of the defendant's rights.")

Unlike in *Keller*, in which the prosecutor during the plea colloquy expressly corrected the District Court's erroneous statement of the

maximum parole term and properly stated what was the maximum term during the colloquy - based on which the Third Circuit found compliance with Rule 11 - here the prosecutor merely made a cross-reference to sex offender registration requirements with no substantive reference to the mandatory nature or the specific requirements. In *Keller* at least the District Court and the prosecutor mentioned the specific parole term, and the prosecutor fully and correctly described it on the record at the plea colloquy. Even if the Court determines that the District Court's responsibility under Rule 11 is delegable to the prosecutor, the delegate did not properly warn Appellant.

The failure to warn Appellant during the plea colloquy and, in light thereof, the acceptance of Appellant's guilty plea and the subsequent imposition of the mandatory condition of probation are plain error. Plain error is a four-pronged analysis requiring (1) error, (2) which is plain or obvious, and (3) which affects a defendant's substantial rights. Then, once those three prongs are satisfied, the fourth prong is that an appellate court may then exercise its discretion to notice a forfeited error when the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Goodson*, 544 F.3d at 539.

Here, it was error for the District Court to fail personally to warn

Appellant during the colloquy of the sex offender registration requirements and restrictions that would flow as a direct consequence of his guilty plea. "In particular, Rule 11(c)(1) [now (b)(1)H] requires the court to inform the defendant of, and make sure he … understands, 'the maximum possible penalty provided by law, including **the effect of** any special parole or supervised release term.'" *U.S. v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995)(bold added). "The principle that a plea of guilty must be made with an understanding of the consequences (acknowledging the rights waived, as well as being informed of the punishment to be imposed) underlies the requirements of Fed.R.Crim.P. 11…." *Government of Virgin Islands v. George*, 741 F.2d 643, 649 (3d Cir. 1984) .

The error in the instant case is obvious from a review of the transcript of the guilty plea colloquy. Further, even if the District Court permissibly delegated its obligation to inform the defendant, neither the PSR, the plea agreement, nor the prosecutor's oral recitation at the plea colloquy referenced the myriad and substantial applicable restrictions of Appellant's freedom of movement (impacting his constitutional rights) that would be imposed upon Appellant in sufficient detail to conclude that Appellant knowingly and intelligently appreciated the nature of that mandatory imposition. *See* PSR ¶ 138; A.101-102 (Plea Agreement ¶ 13); A.067-069

(prosecutor summary of plea agreement during colloquy). **The District Court made no inquiry if the Appellant understood those matters, or indeed if the *pro se* Appellant even understood the plea agreement**. That was error. The District Court merely asked if Appellant signed and reviewed the plea agreement and its terms, not if he understood them. A.066. *See United States v. Gray*, 611 F.2d 194, 198 (7th Cir. 1979)( "[W]e do not consider it error for the prosecutor to describe the nature of the charge and the maximum penalty **if** the inquiry is done in the presence of the district court and **the district court is satisfied that this information has been fully explicated and understood by the defendant.**")(bold and underline added). Therefore, the first two prongs of the plain error standard are satisfied.

The third prong and fourth prongs of the plain error standard also are met. Appellant's right to be fully apprised of the direct consequences of a guilty plea, including the above-referenced supervised release condition and the concomitant sex offender registration requirements and restrictions to which he is subjected, are affected. Further Appellant's affected rights include the Fifth Amendment right against compulsory self-incrimination, the Sixth Amendment right to trial by jury, and the right to confront one's accusers. *Boykin v. Alabama*, 395 U.S. 238 (1969); *George*,

741 F.2d at 649. The waiver of such rights must be fully informed before it can be accepted. *Boykin*, 395 U.S. at 243; *Schweitzer*, 454 F.3d at 202-03. The error also implicates Appellant's freedom of movement and liberty, as discussed *supra* and in *Piasecki*, and Appellant's constitutional due process right to travel intrastate[14] and interstate[15]. As this Court concluded in *Virgin Islands v. Greenaway*, 379 F. App'x 247, 251 (3d Cir. 2010),

> acceptance of an uninformed plea constitutes error that is plain from the face of the proceedings. We further conclude that this error affected Greenaway's substantial rights because it prevented her from entering an informed plea with knowledge of the full range of effects that would flow from it. ... Finally, few principles of criminal law are more essential to the fairness of a plea colloquy than the requirement that a defendant know of the consequences of a guilty plea before the court accepts it. We therefore conclude that affirming the District Court's judgment over Greenaway's uninformed plea would result in a miscarriage of justice.

---

[14] *Lutz v. City of York*, 899 F.2d 255, 256 (3d Cir. 1990) ("The appeal implicates an important and largely unexplained area of constitutional jurisprudence — whether there exists an unenumerated constitutional right of *intra* state travel. We conclude that such a right exists and grows out of substantive due process.").

[15] *Maldonado v. Houstoun*, 157 F.3d 179, 185 (3d Cir. 1998)("The Supreme Court repeatedly and consistently has recognized a fundamental right to interstate travel....").

*Greenaway*, 379 F. App'x at 250-51. This Court in *Greenaway* therefore found that when such substantial rights are affected by virtue of an uninformed guilty plea as to the applicable penalties, the fourth prong of the plain error analysis – effect on the fairness, integrity, or public reputation of judicial proceedings – is satisfied axiomatically.

In addition, more than axiomatically the fourth prong of the plain error standard is met. The failure of a District Court to warn a defendant before he pleads guilty, regarding such long-lasting requirements and restrictions directly resulting from his guilty plea and conviction, seriously affects the fairness, integrity, and public reputation of judicial proceedings. For a minimum 10 years during supervised release after Appellant's release from a 30-year term of imprisonment, and potentially lifetime under various SORNA implemented statutes, Appellant's movement, constitutional rights, and freedoms will be severely restricted, monitored and affected. Indeed, the mandatory condition of supervised release subjecting Appellant to being "in custody" by virtue of the sex offender registration requirements and restrictions correlate to a failure to warn Appellant of a mandatory minimum penalty. Custody means more than physical confinement, including community service, or just the imposition

of a special assessment, and certainly restrictions of freedom of movement resulting from sex offender registration requirements all as recognized (and the latter held) in *Piasecki*. *Piasecki,* 917 F. 3d at 168-73.

Therefore, this Court should remand the matter with direction to the District Court to permit Appellant to withdraw his guilty plea. *Keller*, 594 F.2d at 943.

## II.     The District Court's Sentence is Unreasonable

<u>Standard or Scope of Review</u>. Abuse of discretion. *U.S. v. Tomko*, 562 F.3d 558, 567-68 (3d Cir. 2009).

## <u>Discussion</u>

The imposition of a 360-month sentence – which also was the statutory maximum 30 years - was substantively unreasonable.

In imposing the statutory maximum sentence (which also was the guideline sentence as molded because the guideline calculation of life exceeded the statutory maximum) the Court primarily relied upon:

- the length of time during which Appellant produced child pornography using his two pre-teen daughters, who he sexually molested;

- that Appellant repeatedly filmed and actively directed the

activity with his daughters and uploaded it to a Dropbox

account, and his distribution of the videos to others;

- the fact that videos of Appellant's daughters have been located

  in more than 300 child pornography collections;

- Appellant having groomed his daughters for sexual favors;

- Appellant's demonstrated sexual interest in young children;

- the fact that at times Appellant attempted to transfer blame to

  his daughters for his criminal conduct;

- Appellant's prior record;

- the need for specific deterrence of Appellant and protection of

  the public from Appellant, based on the instant conduct of

  conviction, Appellant's prior record, and the Court's finding

  that Appellant poses a continuing danger.

A.050-55. However, the District Court did not give adequate consideration

or weight to various other factors under 18 U.S.C § 3553(a).

The District Court abused its discretion by not granting a variance

and by not adequately considering in mitigation of sentence, several

personal characteristics of the Appellant, his childhood, and his pretrial

detention. Based on those factors the District Court should have applied a

downward variance from the advisory sentencing guidelines to impose a

sentence lower than 360 months.

The 360-month (30 year) sentence imposed by the District Court was greater than necessary to achieve the attendant purposes of sentencing and was an abuse of the District Court's discretion. "Ultimately, '[t]he touchstone of `reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a).'" *Tomko,* 562 F.3d at 568 (internal cite omitted).

Appellant suffered the practical loss of his father when he was age 5, because his father had molested Mr. Crocker's sister. PSR ¶89; A.029. Mr. Crocker's family, which included four siblings, thus was required to be on public assistance, PSR ¶90, and lived in homeless shelters with the family struggling financially. PSR ¶ 95. Mr. Crocker suffered from depression because of what occurred to his sister, the loss of his father (due to incarceration), and was unfocused in school. PSR ¶ 91; A.029. Mr. Crocker as a child knew that his mother was physically and sexually abused by his father as well. A.029; PSR ¶94. Mr. Crocker began using marijuana and self-medicating, and smoked marijuana daily for about 10 years since about 2006, but never received full or adequate treatment for his drug use or depression. PSR ¶120-122. Mr. Crocker had a learning disability and struggled to and did not complete school, and instead shifted to vocational

training. PSR ¶123-125. Mr. Crocker also had generally stable and successful employment history and a skill set as a carpenter and handyman. PSR ¶¶126-129. Mr. Crocker was pretrial detained in less-than-ideal conditions during a pandemic (DDE5, DDE10), with about 5 years and 1 month elapsing between his initial detention on February 8, 2017 and his sentencing on March 8, 2022 (A.002, Judgment). During that time Mr. Crocker contracted and suffered Covid while in the Federal Detention Center. PSR ¶103.

Although the District Court expressed that it considered some of the above-referenced facts and circumstances in fashioning its sentence (A.049-57), the Court gave those factors absolutely no weight: it imposed not only the guideline maximum sentence, but the statutory maximum sentence of 30 years' incarceration. The District Court did not elucidate why each of those mitigating factors in its assessment made no difference to the sentence or would not be accounted for in the imposition of sentence, other than to state that it considered certain of the proffered mitigating factors. The record does not reflect "'rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a).'" *Tomko,* 562 F.3d at 568 (internal cite omitted).

Further, although the District Court stated that it considered similar

cases and the potential for sentencing disparity (A.055-56), indeed unfair sentencing disparity arises from the sentence imposed on Appellant. The District Court referenced no particular cases, no statistics and no particular comparative facts in its statement that it considered the issue of unwarranted sentencing disparity: "With the help of the presentence report and the chief probation officer, I looked at some of the sentences received or given in this District for this same type of offense, and I found that I was not the only one, and this is not the first occasion, where a defendant has been given the statutory maximum." A.055. However, the statistics within this Circuit for sentencing of sexual abuse offenders demonstrate that of the 55 cases sentenced in fiscal year 2021, the mean months to which offenders were sentenced was 225 months, and the median months for sentences of such offenders was 204 months. Both are well below the 360 months imprisonment imposed on Appellant. Those same statistics nationally reflect even lower sentences: mean months to which offenders were sentenced was 211 months, and the median months for sentences of such offenders was 180 months, based on 1062 cases. These statistics appear in the chart below, which is downloadable at https://www.ussc.gov/research/data-reports/geography/2021-federal-sentencing-statistics:

REMAINDER OF THIS PAGE INTENTIONALLY BLANK

## SENTENCE LENGTH BY TYPE OF CRIME
### Fiscal Year 2021

| TYPE OF CRIME | National | | | Third Circuit | | |
| --- | --- | --- | --- | --- | --- | --- |
| | Mean Months | Median Months | N | Mean Months | Median Months | N |
| TOTAL | 48 | 24 | 57,286 | 53 | 30 | 1,900 |
| Administration of Justice | 13 | 8 | 512 | 14 | 7 | 16 |
| Antitrust | 3 | 3 | 6 | -- | -- | 0 |
| Arson | 63 | 48 | 79 | 62 | 60 | 7 |
| Assault | 57 | 36 | 668 | 59 | 35 | 18 |
| Bribery/Corruption | 20 | 12 | 247 | 24 | 14 | 21 |
| Burglary/Trespass | 23 | 14 | 64 | -- | -- | 1 |
| Child Pornography | 108 | 90 | 1,215 | 123 | 97 | 60 |
| Commercialized Vice | 14 | 11 | 114 | -- | -- | 2 |
| Drug Possession | 1 | 0 | 309 | 0 | 0 | 9 |
| Drug Trafficking | 74 | 60 | 17,608 | 60 | 47 | 715 |
| Environmental | 2 | 0 | 173 | 0 | 0 | 7 |
| Extortion/Racketeering | 25 | 15 | 116 | -- | -- | 2 |
| Firearms | 48 | 37 | 8,150 | 53 | 40 | 296 |
| Food and Drug | 9 | 1 | 47 | 2 | 0 | 3 |
| Forgery/Counter/Copyright | 16 | 12 | 137 | 18 | 15 | 15 |
| Fraud/Theft/Embezzlement | 20 | 12 | 4,571 | 20 | 12 | 340 |
| Immigration | 13 | 8 | 16,937 | 15 | 9 | 96 |
| Individual Rights | 32 | 3 | 69 | 9 | 3 | 4 |
| Kidnapping | 166 | 123 | 92 | -- | -- | 0 |
| Manslaughter | 69 | 59 | 56 | -- | -- | 0 |
| Money Laundering | 57 | 30 | 1,028 | 54 | 33 | 43 |
| Murder | 244 | 231 | 257 | 83 | 104 | 4 |
| National Defense | 37 | 26 | 217 | 25 | 24 | 7 |
| Obscenity/Other Sex Offenses | 22 | 18 | 298 | 18 | 13 | 5 |
| Prison Offenses | 11 | 8 | 532 | 9 | 8 | 30 |
| Robbery | 104 | 90 | 1,300 | 99 | 90 | 72 |
| Sexual Abuse | 211 | 180 | 1,062 | 225 | 204 | 55 |
| Stalking/Harassing | 26 | 18 | 219 | 22 | 17 | 10 |
| Tax | 14 | 12 | 421 | 18 | 12 | 54 |
| Other | 2 | 0 | 782 | 8 | 2 | 8 |

Of the 57,287 National cases, one case was excluded due to missing or indeterminable sentencing information.

Of the 1,900 cases from the Third Circuit, no cases were excluded.

Sentences of 470 months or greater (including life) and probation were included in the sentence average computations as 470 months and zero months, respectively. The information in this table includes conditions of confinement as described in USSG §5C1.1.

SOURCE: U.S. Sentencing Commission, 2021 Datafile, USSCFY21.

In light of the foregoing, Appellant's sentence should be vacated, and the matter remanded for resentencing.

## CONCLUSION

The Court should grant the relief requested in each Argument section of this brief.

Respectfully submitted,

*/s/Rocco C. Cipparone, Jr.*
Rocco C. Cipparone, Jr. Esquire
Law Offices of Rocco C. Cipparone, Jr.
203-205 Black Horse Pike
Haddon Heights, NJ 08035
856-547-2100
856-547-2225 (Fax)
Courtnotices@cipparonelaw.com
Attorney for Appellant

Dated: June 15, 2022

## <u>REQUIRED CERTIFICATIONS</u>

The undersigned certifies as follows:

1.      **Bar Membership**. I am a member in good standing of the Bar of this Court.

2.      **Type-Volume**. This brief was prepared in 14-point Georgia, proportional typeface. According to the word-count function in Microsoft Word for Office 365, this brief contains 6,610 words, exclusive of the cover page, table of contents, table of authorities, certifications, and signature block, complying with the 13,000-word limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i).

3.      **Electronic Filing; Paper Copies**. The electronic version of this brief filed with the Court was automatically scanned by Microsoft Defender and found to contain no known viruses. I further certify that the text in the electronic copy of the brief is identical to the text in the paper copies of the brief filed with the Court (excepting only any format changes that may have occurred in the .pdf conversion).

*/s/Rocco C. Cipparone, Jr.*
Rocco C. Cipparone, Jr.  06-15-2022

## <u>CERTIFICATE OF SERVICE</u>

On June 15, 2022, I served a copy of the foregoing brief and the

accompanying Appendix on counsel for the United States, via ECF filing and

first-class mail (within 5 days after ECF filing), addressed to:

Shawn A. Weede, Esquire
Assistant U.S. Attorney
U.S. Attorney's Office
The Hercules Building
1313 N. Market Street, Suite 400
Wilmington DE 19899-2046

<u>/s/*Rocco C. Cipparone, Jr.*</u>
Rocco C. Cipparone, Jr.