**Dkt. No. 22-1496**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

**UNITED STATES OF AMERICA,**

**v.**

**TORON CROCKER,**
**Defendant-Appellant**

**On Appeal from Judgment of Conviction and Sentence**
**in the United States District Court for the District of Delaware**
**No. 1-17-cr-00010-001 (Leonard P. Stark, J.)**

**APPELLANT'S APPENDIX VOL. 1 (pp. A.001-A.083)**

*ROCCO C. CIPPARONE, JR., ESQUIRE*
**Attorney for Appellant**

**Law Offices of Rocco C. Cipparone, Jr.**
**205 Black Horse Pike**
**Haddon Heights, NJ 08035**
**(856) 547-2100**
**www.CipparoneLaw.com**

# TABLE OF CONTENTS

## <u>VOLUME 1</u>

**Notice of Appeal** ...............................................................**A.001**

**Judgment in a Criminal Case** ......................................... **A.002**

**Transcript of Sentencing Hearing (contains rulings complained of)**............................................................... **A.009**

**Transcript Change of Plea Hearing (contains rulings complained of)**................................................................**A.061**

## <u>VOLUME 2</u>

**District Court Docket Sheet**............................................ **A.084**

**Superseding Indictment**....................................................**A.092**

**Memorandum of Plea Agreement** ....................................**A.096**

## UNITED STATES DISTRICT COURT
## DISTRICT OF

UNITED STATES OF AMERICA,      :      DOCKET #
                              :
                              :
                              :
        v.                       :
                              :
                         ,    :
              Defendant.      :

## NOTICE OF APPEAL
## TO
## U.S. COURT OF APPEALS THIRD CIRCUIT

Notice hereby is given that the above-named defendant appeals to the United States Court

of Appeals for the Third Circuit from

JUDGMENT

ORDER

OTHER (Specify):


of the above United States District Court entered in this action on               .

The defendant hereby requests appointment of counsel pursuant to the Criminal Justice

Act based on his/her indigency, and previously was appointed counsel pursuant to the Criminal

Justice Act in this matter in the District Court.

                                   /s/ *Rocco C. Cipparone, Jr.*
                                   ROCCO C. CIPPARONE, JR., ESQUIRE
                                   203-205 Black Horse Pike
                                   Haddon Heights, NJ 08035
                                   (856) 547-2100
                                   Attorney for Defendant/Appellant

Dated:

**A.001**

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

### District of Delaware

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) | |
| TORON O. CROCKER | ) | Case Number:  17-CR-10-LPS |
| | ) | USM Number:  08902-015 |
| | ) | ROCCO C. CIPPARONE, JR., ESQUIRE |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    ONE OF THE SUPERSEDING INDICTMENT

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐ was found guilty on count(s) _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2551(a) and (e) | PRODUCTION OF CHILD PORNOGRAPHY | 8/20/2016 | ONE |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☑ Count(s)  TWO AND THREE OF THE SUPERSEDING INDICTMENT  ☐ is  ☑ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

3/8/2022
Date of Imposition of Judgment

Signature of Judge

HONORABLE LEONARD P. STARK, UNITED STATES DISTRICT JUDGE
Name and Title of Judge

3/10/22
Date

**A.002**

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

| | Judgment — Page | 2 | of | 7 |

DEFENDANT:   TORON O. CROCKER
CASE NUMBER:   17-CR-10-LPS

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
360 MONTHS.

☑ The court makes the following recommendations to the Bureau of Prisons:
 SUBSTANCE ABUSE AND MENTAL HEALTH COUNSELING DURING THE TERM OF IMPRISONMENT.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

 ☐ at _____ ☐ a.m. ☐ p.m.   on _____ .

 ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

 ☐ before 2 p.m. on _____ .

 ☐ as notified by the United States Marshal.

 ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

# A.003

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

| | | | Judgment—Page | 3 | of | 7 |

DEFENDANT:   TORON O. CROCKER
CASE NUMBER:   17-CR-10-LPS

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

10 YEARS.

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
     ☐ The above drug testing condition is suspended, based on the court's determination that you
        pose a low risk of future substance abuse. *(check if applicable)*
4.   ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of
        restitution. *(check if applicable)*
5.   ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.   ☑ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as
        directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you
        reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.   ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 3A — Supervised Release

| | Judgment—Page | 4 | of | 7 |

DEFENDANT: TORON O. CROCKER
CASE NUMBER: 17-CR-10-LPS

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

**A.005**

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                       Sheet 3D — Supervised Release

| | Judgment—Page | 5 | of | 7 |

DEFENDANT: TORON O. CROCKER
CASE NUMBER: 17-CR-10-LPS

## SPECIAL CONDITIONS OF SUPERVISION

1.  DEFENDANT SHALL COMPLY WITH THE REQUIREMENTS OF THE SEX OFFENDER REGISTRATION AND NOTIFICATION ACT (42 U.S.C. §16901, ET SEQ.) AS REQUIRED BY ANY STATE SEX OFFENDER REGISTRATION AGENCY IN WHICH HE RESIDES, WORKS OR IS A STUDENT, OR WAS CONVICTED OF A QUALIFYING OFFENSE.

2.  DEFENDANT SHALL PARTICIPATE IN MENTAL HEALTH AND/OR SEX OFFENDER TREATMENT PROGRAMS, WHICH MAY INCLUDE A PSYCHOSEXUAL EVALUATION, AN ABEL ASSESSMENT FOR SEXUAL INTEREST, RISK ASSESSMENT TESTING, AND COUNSELING.  THE PROBATION OFFICER, UNDER THE DIRECTION OF THIS COURT, SHALL SUPERVISE THE SELECTION OF THE PROGRAM AND ALL ADMINISTRATIVE DETAILS OF PARTICIPATION IN THE PROGRAM.  DEFENDANT SHALL WAIVE ALL RIGHTS OF CONFIDENTIALITY REGARDING SUCH TREATMENT AND EVALUATION TO ALLOW THE RELEASE OF INFORMATION TO THE PROBATION OFFICER AND THE COURT, AND DEFENDANT SHALL ALLOW FREE COMMUNICATION BETWEEN THE PROBATION OFFICER, THE COURT AND THE TREATMENT PROVIDER(S).

3.  DEFENDANT SHALL SUBMIT TO RANDOM POLYGRAPH EXAMINATIONS, ON SUBJECTS RELATED TO SUPERVISION AND TREATMENT.  THE PROBATION OFFICER SHALL SUPERVISE THE ADMINISTRATIVE DETAILS OF THE POLYGRAPH EXAMINATIONS, INCLUDING THE FREQUENCY IN WHICH SUCH EXAMINATIONS ARE ADMINISTERED.  ANY EXAMINATIONS SHALL BE ADMINISTERED BY A CERTIFIED EXAMINER SELECTED BY THE PROBATION OFFICER.  SUCH EXAMINATIONS SHALL BE ADMINISTERED BY A CERTIFIED EXAMINER.  DEFENDANT MAY BE REQUIRED TO CONTRIBUTE TO THE COSTS OF THE POLYGRAPH EXAMINATIONS TO THE EXTENT THAT HE HAS THE ABILITY TO PAY.

4.  DEFENDANT SHALL COMPLY WITH THE TERMS OF USE OF ANY WEBSITE OR INTERACTIVE COMPUTER SERVICE THAT HE ACCESSES, INCLUDING PROHIBITIONS AGAINST USE BY CONVICTED SEX OFFENDERS.

5.  DEFENDANT IS PROHIBITED FROM ENGAGING IN ANY OCCUPATION, BUSINESS, PROFESSION, OR VOLUNTEER ACTIVITY THAT INCLUDES CONTACT WITH MINORS WITHOUT THE APPROVAL OF THE COURT.

6.  DEFENDANT SHALL NOT OWN OR OPERATE A PERSONAL COMPUTER OR ELECTRONIC DEVICES WITH INTERNET ACCESS IN HIS HOME.  THIS IS AN INITIAL PROHIBITION WHICH THE COURT WILL TERMINATE WHEN: (1) DEFENDANT HAS BEEN IN COMPLETE COMPLIANCE WITH ALL CONDITIONS OF SUPERVISION FOR AT LEAST ONE YEAR; (2) DEFENDANT HAS NOT DEMONSTRATED DECEPTION ON ANY POLYGRAPH EXAMINATIONS AND/OR HAS NOT MADE ANY ADMISSIONS OR DISCLOSURES INDICATING RISK BEHAVIORS, AND (3) THE DEFENDANT'S COURT APPOINTED MENTAL HEALTH AND/OR SEX OFFENDER THERAPISTS AND COUNSELORS ALL AGREE THAT THE TERMINATION OF THE PROHIBITION WILL AID IN HIS REHABILITATION.

7.  IF GRANTED INTERNET ACCESS BY THE COURT: (1) DEFENDANT SHALL PROVIDE A COMPLETE RECORD OF ALL PASSWORDS AND USER IDENTIFICATIONS, BOTH PAST AND PRESENT, TO THE U.S. PROBATION OFFICE, AND SHALL NOT MAKE ANY CHANGES WITHOUT PRIOR WRITTEN APPROVAL OF THE COURT: (2) DEFENDANT SHALL COMPLY WITH THE REQUIREMENTS OF ANY COMPUTER/INTERNET USAGE MONITORING PROGRAM ESTABLISHED, ADMINISTERED BY THE U.S. PROBATION OFFICE: (3) DEFENDANT SHALL NOT INTERFERE WITH THE INSTALLATION OF MONITORING SOFTWARE ON ANY COMPUTER OR ELECTRONIC DEVICE TO WHICH HE HAS ACCESS.  THE SOFTWARE MAY RESTRICT AND/OR RECORD ANY ACTIVITY ON THE COMPUTER OR DEVICE, INCLUDING THE CAPTURE OF KEYSTROKES, APPLICATION DATA, INTERNET USE HISTORY, EMAIL AND INSTANT MESSAGE APPLICATIONS, AND ONLINE CHAT CONVERSATIONS.  A NOTICE WILL BE PLACED ON THE COMPUTER OR DEVICE AT THE TIME OF INSTALLATION TO WARN OTHERS OF THE EXISTENCE OF THE MONITORING SOFTWARE.  DEFENDANT SHALL NOT REMOVE, TAMPER WITH, REVERSE ENGINEER, OR IN ANY WAY CIRCUMVENT THE MONITORING SOFTWARE.

8.  DEFENDANT SHALL NOT POSSESS OR VIEW ANY MATERIALS, INCLUDING PICTURES, PHOTOGRAPHS, FILMS, VIDEOS, COMPUTER-GENERATED IMAGES, DRAWINGS OR CARTOON DEPICTING MINORS, OR WHAT APPEARS TO BE MINORS, ENGAGED IN SEXUALLY EXPLICIT CONDUCT AS DEFINED IN 18 U.S.C. § 2256(8).

9.  DEFENDANT SHALL NOT POSSESS OR VIEW ANY MATERIALS INCLUDING PICTURES, PHOTOGRAPHS, FILMS, VIDEOS, COMPUTER-GENERATED IMAGES, DRAWINGS, OR CARTOON DEPICTING MINORS, OR WHAT APPEARS TO BE MINORS, ENGAGED IN SEXUALLY EXPLICIT CONDUCT AS DEFINED IN 18 U.S.C. § 2256(2).  THIS IS AN INITIAL PROHIBITION WHICH THE COURT WILL TERMINATE WHEN: (1) DEFENDANT HAS BEEN IN COMPLETE COMPLIANCE WITH ALL CONDITIONS OF SUPERVISION FOR AT LEAST ONE YEAR; (2) DEFENDANT HAS NOT DEMONSTRATED DECEPTION ON ANY POLYGRAPH EXAMINATIONS AND/OR HAS NOT MADE ANY ADMISSIONS OR DISCLOSURES INDICATING RISK BEHAVIORS, AND (3) THE DEFENDANT'S COURT APPOINTED MENTAL HEALTH AND/OR SEX OFFENDER THERAPISTS AND COUNSELORS ALL AGREE THAT THE TERMINATION OF THE PROHIBITION WILL AID IN HIS REHABILITATION

10.  DEFENDANT SHALL NOT ASSOCIATE WITH ANYONE WHO IS A KNOWN SEXUAL OFFENDER, EXCEPT IN A REGISTERED TREATMENT PROGRAM.

11.  DEFENDANT SHALL HAVE NO UNSUPERVISED INTERACTION WITH A MINOR OTHER THAN HIS BIOLOGICAL OR LEGALLY ADOPTED CHILDREN (UNLESS THEY ARE VICTIMS) WITHOUT THE PRIOR APPROVAL OF THE COURT.

12.  DEFENDANT SHALL NOT RESIDE WITHIN 500 FEET OF A SCHOOL, PLAYGROUND OR DAYCARE CENTER.

13.  DEFENDANT SHALL NOT VISIT OR LIVE AT A RESIDENCE WHERE THERE ARE MINORS OTHER THAN HIS BIOLOGICAL OR LEGALLY ADOPTED CHILDREN (UNLESS THEY ARE VICTIMS) PRESENT WITHOUT APPROVAL OF THE COURT AND WITHOUT THIRD PARTY NOTIFICATION.  DEFENDANT SHALL NOT INVITE OR OTHERWISE ENCOURAGE ANY MINOR OTHER THAN HIS BIOLOGICAL OR LEGALLY ADOPTED CHILDREN (UNLESS THEY ARE VICTIMS) TO VISIT HIS LIVING QUARTERS.

14.  DEFENDANT SHALL COMPLY WITH ALL RULES AND REGULATIONS OF ANY TRANSITIONAL HOUSING PLACEMENT.

15.  DEFENDANT SHALL PROVIDE THE PROBATION OFFICER WITH ACCESS TO ANY REQUESTED FINANCIAL INFORMATION.

16.  DEFENDANT SHALL PARTICIPATE IN A DRUG TREATMENT PROGRAM, WHICH MAY INCLUDE TESTING AND COGNITIVE BEHAVIORAL LIFE SKILLS TRAINING.

**A.006**

AO 245B (Rev. 09/19)  Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page ___6___ of ___7___

DEFENDANT: TORON O. CROCKER
CASE NUMBER: 17-CR-10-LPS

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ NOT ORDERED | $ WAIVED | $ N/A | $ N/A |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| | | | | | |
|---|---|---|---|---|---|
| **TOTALS** | $ | 0.00 | $ | 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the  ☐ fine  ☐ restitution.

☐ the interest requirement for the  ☐ fine  ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**A.007**

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

DEFENDANT: TORON O. CROCKER
CASE NUMBER: 17-CR-10-LPS

Judgment — Page ___7___ of ___7___

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☑ Lump sum payment of $ __100.00__ due immediately, balance due

     ☐ not later than _____ , or
     ☐ in accordance with ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

**B** ☐ Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

**C** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number Defendant and Co-Defendant Names *(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| | | | |

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☑ The defendant shall forfeit the defendant's interest in the following property to the United States:
**THE COURT INCORPORATES THE PRELIMINARY ORDER OF FORFEITURE IN THIS CASE CASE (D.I. 124).**

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

**A.008**

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF DELAWARE

 3   UNITED STATES OF AMERICA,)
                              )
 4            Plaintiff,      )
                              )   C.A. No.  17-10-LPS
 5   v.                       )
                              )
 6   TORON CROCKER,           )
                              )
 7            Defendant.      )

 8

 9                      Tuesday, March 8, 2022
                              11:05 a.m.
10                           Sentencing

11

12                        844 King Street
                         Wilmington, Delaware
13

14   BEFORE: THE HONORABLE LEONARD P. STARK
     United States District Court Judge
15

16

17   APPEARANCES:

18        UNITED STATES ATTORNEY'S OFFICE
          BY: SHAWN WEEDE, ESQ.,
19        Assistant United States Attorneys
             Counsel for Government
20

21        TORON O. CROCKER

22                         -and-

23        LAW OFFICES OF ROCCO C. CIPPARONE, JR.
          BY: ROCCO C. CIPPARONE, JR., ESQ.
24        (Haddon Heights, New Jersey)
             On behalf of Toron Crocker
25
```

**A.009**

1                    P R O C E E D I N G S

2

3       (Proceedings commenced in the Courtroom 6B beginning at

4  11:05 a.m.)

5               **MR. WEEDE:**  Good morning, Your Honor.

6               **THE COURT:**  Just note for the record, if you

7  want to wear a mask, fine, wear a mask, but nobody has to

8  wear a mask at this point.

9               Go ahead.

10              **MR. WEEDE:**  Thank you, Your Honor.  For the

11  record, Shawn Weede for the United States.

12              Now is the time the Court has set for the

13  sentencing hearing in the matter of United States of

14  America versus that Toron Crocker, indexed at 17-10-LPS.

15  The defendant, representing himself, is in the courtroom,

16  along with standby counsel, Mr. Rocco Cipparone.  And the

17  Government is prepared to proceed.

18              Your Honor, if I may approach.  The Government

19  has a motion for an order, preliminary order of

20  forfeiture to hand up to the Court.  I provided a copy to

21  defense.  This pertains to electronic devices that were

22  seized at the time of arrest and were agreed to be

23  forfeited in a plea agreement.

24              **THE COURT:**  That's fine.  You may approach.

25  Thank you.

1          Good morning, Mr. Cipparone.  Thank you for

2    being here.

3          **MR. CIPPARONE:**  Good morning, Your Honor.

4          **THE COURT:**  Good morning, Mr. Crocker.

5          Are you prepared to proceed, Mr. Crocker?

6          **THE DEFENDANT:**  Yes.  I'm not prepared to

7    proceed today.

8          **THE COURT:**  Let me have you come to the podium,

9    so I can be sure to hear whatever it is you have to say.

10   I think you said you're not prepared to proceed.

11         **THE DEFENDANT:**  No, Your Honor, I'm not.

12         **THE COURT:**  Why is that?

13         **THE DEFENDANT:**  I was locked down for two

14   months during the process for getting ready for

15   sentencing.  I didn't receive any information and wasn't

16   able to do any contacting the outside.  I was unable to

17   prepare for this sentencing.  And also my father died last

18   week, so I was unable to get character letters from my

19   family because they were busy doing other things.

20         **THE COURT:**  Sorry to hear about the passing of

21   your father.

22         Have you seen the presentence report?

23         **THE DEFENDANT:**  Yes, I have.  I also have

24   objections that -- against it, but I was unable to mail

25   any objections to the Court because we were locked down

1  for two months for Covid and other reasons.

2  **THE COURT:**  When did you get the presentence

3  report?

4  **THE DEFENDANT:**  About a month and a half ago.

5  **THE COURT:**  When did you prepare the

6  objections?

7  **THE DEFENDANT:**  I didn't have a chance to

8  prepare the objections because I had objections, but I

9  didn't -- I wasn't able to contact the Court.

10  So I contacted my lawyer through e-mail once

11  we got off the lockdown, and he rescheduled it, but it

12  was only days, about seven days that I had, before I even

13  knew what was going on.

14  **THE COURT:**  So you have objections, but you've

15  not written them down yet; is that what you're saying?

16  **THE DEFENDANT:**  I don't have them with me, no.

17  **THE COURT:**  Have you written them down

18  somewhere, and you just were unable to mail them to me or

19  you have not yet written them down?

20  **THE DEFENDANT:**  I have not yet written them

21  down.

22  **THE COURT:**  I see.  All right.

23  What would your request be at that point then?

24  **THE DEFENDANT:**  I would just request if I can

25  get some more time to prepare for this sentencing hearing?

**A.012**

1   **THE COURT:**  How much time would you be asking

2   for?

3        **THE DEFENDANT:**  At least 30 days.

4        **THE COURT:**  Have a seat please.

5        Mr. Cipparone, I recognize you're not here as

6   appointed counsel but standby counsel.  I assume you're

7   the attorney he referred to when he said he was in touch

8   with an attorney.

9        Is there anything you want to add to the

10  record?

11       **MR. CIPPARONE:**  Your Honor, as Your Honor

12  knows, once Mr. Crocker contacted me to advise he had been

13  in lockdown.  I asked the Court to reschedule the

14  sentencing date, which it graciously did until today.

15       The day I found out I did, just for the

16  record, notify Mr. Crocker of that by e-mail.  I did not

17  receive a reply e-mail, but I did notify him.  And then

18  as I understand it, Your Honor, I think sent written

19  notice to him as well.  But that's all I can add, Your

20  Honor.  I'm not taking a position on the continuance.

21       **THE COURT:**  I understand.  Thank you very much.

22       Mr. Weede, why don't you come back and tell me

23  what the Government's position is at this point.

24       **MR. WEEDE:**  Your Honor, for the record I would

25  note that the victims' mother is here, the victims'

1    grandfather is here.  And at some point, the Government's

2    aware that the -- Your Honor is going to take a different

3    job on the Federal Circuit, and the Court here has a

4    substantial amount of time invested in this case to

5    include reviewing the videos firsthand as part of the

6    pretrial motions in this case.

7           So I would note that, again, this would

8    inconvenience the victims.  And I'm not sure if the

9    defendant is ever going to be in a position where he's

10   actually willing and ready to go forward with sentencing.

11          So depending on the amount of time, if we're

12   losing the Court, I would object because the amount of

13   time that's been spent by the Court on this.  We have to

14   basically start from scratch with a new judge.

15          So with that, I'll note my objection.

16          **THE COURT:**  Don't go away.  It's a complicated

17   situation.

18          Just talk about me for the moment.  It's

19   likely that I will be taking the new position you

20   referenced later this month.  There is a possibility, but

21   it's not within the control of me or anyone else in this

22   room, that I might be permitted, nonetheless, to handle

23   this case going forward, but that's beyond my control.

24   So I can't commit to that after the point at which I

25   would be in this position as a formal matter.

**A.014**

1          As you have referenced, I put a lot of time

2     into this case too, including most especially reviewing

3     the evidence, what you all submitted.  There's a clear

4     record of that.  And I certainly am not anxious to have

5     any of my colleagues have to do that as well.

6          So if it weren't for the complication of my

7     schedule, I would be prepared to consider moving this at

8     least a little bit, but my schedule is complicating

9     things.

10          On top of it, you know, I'm, of course, very

11     sympathetic to the mother and the grandfather of the

12     victim, and they're here, of the victims, and they're

13     here.

14          I'm fully prepared for this sentencing and I

15     think that Mr. Crocker has had adequate time to prepare.

16     He's also been advised through the colloquies that it was

17     not a good idea to fire his attorney, but he had the

18     right to do that.

19          All that said, I guess I'm looking for a more

20     crystalized position from the Government recognizing the

21     uncertainties.

22          Do you object to the request for a continuance

23     of approximately 30 days or not?  And if you want time to

24     think about it, I can give you time.

25          **MR. WEEDE:**  Yes, Your Honor, I would object.  I

**A.015**

1   don't know -- the defendant hasn't put forth and hasn't

2   described any objections to the PSR.  The Guidelines are

3   actually pretty straightforward in this case, and the PSR

4   is comprehensive.

5        If it means that we're going to have to kick

6   this down what sounds like a -- not just 30 days but

7   could likely be much longer than that if a new judge is

8   assigned, the Government objects.  The defendant has had

9   time to review the PSR.  He has chosen to represent

10  himself, and he was aware of the new sentencing date

11  which was scheduled at his request.

12       **THE COURT:**  Thank you.

13       Mr. Crocker, if you want to come back, if

14  there's anything you want to add.

15       **THE DEFENDANT:**  Yes, Your Honor.  I have had

16  time to read the PSR, but I haven't had time to

17  communicate outside of the cell that I was locked down in.

18       I don't believe I had enough time to talk to

19  my standby counsel for legal assistance because he was

20  unable to come visit me because of the lockdown.  And

21  also I wanted to talk to him about reassigning him to the

22  case because just taking your advice, I know it would be

23  more beneficial for me.

24       And I also -- I'm sorry about the victims'

25  mother and the grandfather being inconvenienced, but I

**A.016**

1    just want the best for the victims and their mother and

2    my family also.  So I just want to make the right

3    decision for everybody.

4              **THE COURT:**  When you say "reassigning," you are

5    considering asking me to reappoint Mr. Cipparone as your

6    attorney; is that what you're saying?

7                   **THE DEFENDANT:**  Yes, Your Honor, if possible.

8                   **THE COURT:**  Is that something you're asking for

9    now?

10                  **THE DEFENDANT:**  I don't know if I can, but yes.

11                  **THE COURT:**  Anything else you want to add?

12                  **THE WITNESS:**  That would be it, Your Honor.

13                  **THE COURT:**  Mr. Weede, do you want to address

14   what I now see as a request for appointment of

15   Mr. Cipparone as counsel for purposes of sentencing?

16             **MR. WEEDE:**  Thinking about this on the fly, he

17   has not waived his right to counsel by conduct.  He chose

18   to waive it under the Faretta factors.  I believe the

19   Court has discretion here to appoint counsel -- reappoint

20   counsel, I believe.

21             I haven't researched this issue, but that

22   would be my understanding based on having gone through

23   this exercise in a different case.

24                  **THE COURT:**  Okay.  Thank you.

25             Mr. Cipparone, why don't you come back.  I'm

**A.017**

1   happy to hear whatever you want to say, but let me first

2   put it to you this way.  If I'm not persuaded to grant a

3   continuance, are you available if I were to appoint you

4   as counsel for this sentencing, and are you prepared to

5   be at all helpful to Mr. Crocker today?

6           **MR. CIPPARONE:**  I will certainly do my best.

7   Everybody's definition of helpful is different.  So

8   whether Mr. Crocker has a different definition than the

9   Court might or I might, I will do my best.

10          I've read, of course, the presentence report.

11  I stayed up on the developments in the case as standby

12  counsel, so I would be prepared in that respect.

13          I'd have to talk to him about what objections,

14  if any, he believes are appropriate to the PSR, but I can

15  certainly do that, Judge.

16          Frankly, I don't believe there are any

17  applicable objections to the PSR from my perspective, as

18  standby counsel, but I certainly would like time to

19  consult with him.  But I'll be prepared to proceed if

20  that's Your Honor's choice.

21          **THE COURT:**  Are you available to us the rest of

22  today?

23          **MR. CIPPARONE:**  I am, Judge.

24          **THE COURT:**  Have a seat.  Thank you.

25          **MR. CIPPARONE:**  Thank you.

**A.018**

1          **THE COURT:**  Mr. Weede, what I'm considering is

2    reappointing Mr. Cipparone and continuing this hearing

3    until no later than 1:00 p.m. today, so up to an hour and

4    45 minutes but maybe less.

5          What would your position be at that time?

6          **MR. WEEDE:**  Your Honor, I don't believe I have

7    an issue with that.

8          May I consult with the victims please?

9          That's fine for the Government, Your Honor.

10         **THE COURT:**  Okay.  Thank you.

11         So Mr. Crocker, I'm granting your request to

12   reappoint Mr. Cipparone as your attorney.  He has, at my

13   direction, remained standby counsel ever since and

14   including jury selection and is familiar with the

15   presentence report and is very experienced as a criminal

16   defense lawyer and will do the best that he can to be of

17   assistance to you as we go forward with sentencing.

18         I'm denying your request for a continuance of

19   any length, other than up to and including 1:00 p.m.

20   today.  So about an hour and 40 minutes from now, we will

21   continue with this sentencing hearing.  The request for

22   30 days or anything like that or beyond it is denied for

23   reasons that I think are pretty clear from the record

24   based on my discussions with Mr. Weede.  But among other

25   things, there's a request if I continue this sentencing

1   beyond this week, that I may not be permitted to be the

2   sentencing judge.  And I think under the circumstances,

3   that would be not in the interest of justice, given my

4   familiarity with this case and my familiarity with the

5   evidence, and knowing how busy the other judges on this

6   court are.

7           Second, I think you've had more than adequate

8   time to prepare for this sentencing.  I have extended,

9   that is continued the sentencing hearing, after we heard

10  a couple weeks ago that there were some issues that

11  interfered with your ability, so you say, to prepare for

12  the sentencing, but we gave you additional time.

13          Third, it was your decision, and you had the

14  absolute constitutional right to do it, to decide to

15  dismiss your attorney at the time of jury selection,

16  including the sentencing process.  That was against my

17  recommendation to you, but even so, you've had plenty of

18  time with the PSR to make your objections known.  All the

19  deadlines for objections to the PSR have passed.  The

20  Government and myself have prepared for the sentencing

21  based on your non-objection.

22          All that said, I will be prepared to hear

23  whatever objections Mr. Cipparone wants to present after

24  his discussions with you; although, I reserve the right

25  to deny them all as untimely, but I will hear them and

1    will see what they are.

2              And finally, most importantly, there's the

3    interest of the victims and the victims' mother and

4    grandfather that have taken the time out of their

5    schedule to be here.  You say you want to do what's best

6    for the victims, and there's very little I can do for the

7    victims, but I can at least bring finality to this case

8    by sentencing you.  That's what I fully intend to do

9    today.

10             Mr. Cipparone, you understand you are now

11   counsel again?

12         **MR. CIPPARONE:**  I do, Your Honor.

13         **THE COURT:**  I direct that you do your best to

14   meet with your client and to be ready to represent him at

15   1:00 p.m. today.

16             Do you want -- I'm flexible the next few

17   hours.  Do you want to have the opportunity to maybe let

18   me know if you're available sooner than that or do you

19   want to just say 1:00?  What's best for you?

20         **MR. CIPPARONE:**  If I finish sooner than that,

21   Your Honor, I can certainly notify the court, and we will

22   proceed.

23         **THE COURT:**  Just stay in touch with us.  And if

24   you're done sooner than 1:00, and we can reach everybody,

25   we'll start sooner than 1:00; otherwise, we will start no

1    later than 1:00.

2         **MR. CIPPARONE:**  I should say for the record,

3    when I reference that I e-mailed Mr. Crocker, I was simply

4    indicating to the Court I had complied with the

5    instructions from the deputy clerk that I wasn't breaching

6    privilege.  I was communicating that he got the notice

7    your Honor directed me to provide.

8         **THE COURT:**  That was in connection with the

9    continuance leading to today, right?

10        **MR. CIPPARONE:**  That's correct, Your Honor.

11        **THE COURT:**  We asked you to make sure to do

12   your best to let him know.

13        **MR. CIPPARONE:**  Yes, Your Honor.

14        **THE COURT:**  We will be in recess.

15      (Whereupon, a recess is taken.)

16        **THE COURT:**  Good afternoon.  The Government is

17   prepared to proceed?

18        **MR. WEEDE:**  Yes, Your Honor.

19        **THE COURT:**  Mr. Cipparone, how about the

20   defense?

21        **MR. CIPPARONE:**  We are prepared to proceed,

22   Your Honor.

23        **THE COURT:**  For the record, have you had time

24   to speak with your client?

25        **MR. CIPPARONE:**  I have had a good period of

1    time, Your Honor, and adequate time in my opinion.

2            **THE COURT:**  Thank you.  You can have a seat for

3    the moment.

4            So I did carefully review everything that was

5    submitted in advance of the sentencing hearing.  That

6    includes the presentence report, which we'll talk about

7    more in a moment.  We received a sentencing memorandum

8    from the Government, did not receive anything in writing

9    from the Defense.  We also, as is basically always the

10   case in our district, received a sealed Attachment A, and

11   I have considered that and factored that into my thinking

12   about the case.

13           Mr. Weede, anything else that was submitted in

14   writing that I may have overlooked?

15           **MR. WEEDE:**  No, Your Honor.

16           **THE COURT:**  Mr. Cipparone, are you aware of

17   anything else in writing?

18           **MR. CIPPARONE:**  No, Your Honor.

19           **THE COURT:**  Thank you.  Let's talk about the

20   presentence report, Mr. Crocker.  I believe we established

21   this morning, but let me make clear, you have had a chance

22   to read the presentence report, correct?

23           **THE DEFENDANT:**  Correct.

24           **THE COURT:**  Mr. Weede, there are no objections

25   from the Government, correct?

**A.023**

1        **MR. WEEDE:**  That's correct, Your Honor.

2        **THE COURT:**  Mr. Cipparone, as you know, no

3    objections were submitted in advance with respect to the

4    PSR.  Are there any at this point?

5        **MR. CIPPARONE:**  There are no Guideline

6    objections Your Honor, just some factual what I'll term as

7    comments or clarifications but not Guidelines.

8        **THE COURT:**  You want to put those on the record

9    at this point?

10        **MR. CIPPARONE:**  May I.  Your Honor, after

11   meeting with Mr. Crocker this morning, he has asked that I

12   bring to the Court's attention with respect to

13   Paragraph 16 of the report, which is on Page 5.  That

14   paragraph relates to the -- and Your Honor has heard, we

15   had a suppression hearing, the recorded interview with the

16   FBI, in which Mr. Crocker engaged on the day of his

17   arrest.  He doesn't dispute that he, at the time said to

18   the FBI, that his daughters were ages three and five

19   respectively when the activity began.  He's advised me he

20   was particularly nervous that day.  It was actually seven

21   and nine.  So even though he's not contesting that the

22   paragraph as written is accurate in terms of what he said

23   to the FBI, he wanted the Court to be aware that, in fact,

24   his position is their ages were seven and nine.

25        **THE COURT:**  He's contending he misspoke in his

1    interview?

2          **MR. CIPPARONE:**  That's correct, Your Honor.

3    And the same change effectively relates to Paragraph 35 on

4    Page 9.  And there it references that the activity began

5    in 2011.  If we view the ages that Mr. Crocker advised, it

6    should be 2015.

7          **THE COURT:**  In which paragraph is that?

8          **MR. CIPPARONE:**  I'm sorry, 35 on Page 9, Your

9    Honor.

10         **THE COURT:**  It says he did say 2011, but he

11   should have said -- he now says what year?

12         **MR. CIPPARONE:**  2015.

13         **THE COURT:**  Anything else?

14         **MR. CIPPARONE:**  Those are the only two factual,

15   for lack of a better term, corrections or comments, Your

16   Honor.

17         **THE COURT:**  Thank you.

18         **MR. CIPPARONE:**  Other than that, the

19   presentence report is acceptable.

20         **THE COURT:**  Mr. Weede, any position from the

21   Government on whether I should direct the probation office

22   to just clarify that these are the things he said in the

23   statement, but he now says something different?

24         **MR. WEEDE:**  I have no objection to the PSR

25   being amended to say that that's what the defendant is

**A.025**

1    saying now.  But I don't -- I take it, that's what Mr.

2    Cipparone's position is, which is at the time, as we both

3    listened to it a number of times, and I know the Court

4    has, that's what he said in his post-Miranda interview.

5            If he wants to say now, if that's what his

6    recollection is, I don't have a problem with that being

7    added, but it shouldn't be stricken in terms of the

8    original date he said it.

9        **MR. CIPPARONE:**  That's a fair characterization,

10   Your Honor.

11       **THE COURT:**  That's what you're asking for.

12       **MR. CIPPARONE:**  Yes.

13       **THE COURT:**  And I will grant that.  I'll direct

14   that the probation officer please amend the presentence

15   report, making clear in Paragraphs 16 and 35 that while

16   Mr. Crocker said the ages and the dates as reflected in

17   the PSR as it currently exists, he now contends that he

18   was mistaken or misspoke and that, in fact, the victims

19   were seven and nine when the abuse began, and that that

20   was 2015 as opposed 2011.

21           Mr. Matthews, any questions about that?

22       **THE PROBATION OFFICER:**  Thank you, Your Honor.

23   Would it be acceptable to just drop a footnote and clarify

24   it that way?

25       **THE COURT:**  That would be fine.

1         **THE PROBATION OFFICER:**  Thank you, Your Honor.

2         **THE COURT:**  Mr. Cipparone, there's no objection

3 to the Guidelines.  So we should agree the offense level

4 would be 43, the criminal history category would be three,

5 which would be a guideline range of life imprisonment.

6 But given the statute that the defendant pled guilty, the

7 mandatory minimum here is 15 years and then -- not

8 mandatory but the maximum under the statute is 30 years.

9         Do you agree with all of that?

10         **MR. CIPPARONE:**  I do, Your Honor.

11         **THE COURT:**  Mr. Weede, do you agree with all

12 that?

13         **MR. WEEDE:**  Yes, Your Honor.

14         **THE COURT:**  That would be the two amendments

15 that I noted in the presentence report adopted as written.

16         That puts before the Court what is the

17 appropriate sentence for Mr. Crocker.

18         On Count 1 of the indictment to which he pled

19 guilty charging him with production of child pornography

20 in violation of Title 18 United States Code Section

21 2251(a) and (e).

22         Mr. Cipparone, I will hear your presentation

23 first and if your client wishes to speak, of course, he

24 may.  And then we'll hear the Government's presentation,

25 and then you, Mr. Cipparone, will have the last word.

**A.027**

1          Go ahead, please.

2          **MR. CIPPARONE:**  Thank you, Your Honor.

3    Respectfully, I ask the Court to impose the mandatory

4    minimum sentence here of 15 years imprisonment primarily

5    based upon the 3553(a) factors.  I apologize if this is a

6    little disjointed, Your Honor.  As you know I --

7          **THE COURT:**  I understand the situation, and I

8    appreciate you doing the best you can.

9          **MR. CIPPARONE:**  Thank you, Your Honor.

10         Mr. Crocker stands before Your Honor at age 36

11   years old.  Even when I say the minimum sentence, it's

12   not minimal.  If the Court were to impose a 15-year

13   sentence, of course that, as we all know, is without

14   parole in the Federal system.  It is an extremely

15   substantial sentence that I respectfully submit would be

16   sufficient, but not greater than necessary, to satisfy

17   the intended purposes of sentencing.  It certainly will

18   provide punishment to Mr. Crocker.  I don't think that,

19   you know, while reasonable minds can differ about degrees

20   of punishment, it's substantially punitive to spend 15

21   years of your life in jail.

22         It certainly would, with what I'm also going

23   to say in a little bit, recommended therapy and treatment

24   that I would ask the Court to recommend for him both

25   while he's in the Bureau of Prisons and while he's on

**A.028**

1    supervised release would provide deterrents to

2    Mr. Crocker.  And I would submit adequate general

3    deterrents to persons similarly situated to him.

4            And when you consider all of the factors under

5    3553(a) I think, again, it would be a sufficient, but not

6    greater than necessary, sentence.

7            From the presentence report, we know that

8    Mr. Crocker, at a very young age, suffered, when I say

9    the loss of his father, meaning his father became

10   incarcerated while he was -- Mr. Crocker, himself, was

11   just six years old for, I don't want to use the word

12   ironically, but sadly, I would say, a similar offense

13   committed against his own sister.  That experience, of

14   course, was traumatic for him, certainly affected him as

15   his mother, in the presentence report in her interview

16   with the probation officer, indicated.

17           So he was lacking that paternal role model.

18   He did have a stepfather, who stepped in, and was by all

19   accounts, I think including Mr. Crocker, a positive role

20   model for him.  He did witness, as the report indicates,

21   you know, physical abuse of his mother by his biological

22   father that was substantial.

23           He had a difficult upbringing, let's say, not

24   because his mother wasn't doing her best.  The report

25   actually is very laudable in terms of the way she did

**A.029**

1    raise and attempted to raise Mr. Crocker in very

2    difficult circumstances.  But I'd ask the Court to

3    consider that at part of the mitigation in 3553(a).

4           Mr. Crocker, as Your Honor knows, again, from

5    the presentence report, has had a consistent employment

6    history, in fact sometimes working two or three jobs at a

7    time.  He does have significant, I think by all accounts,

8    carpentry skills and was in the process of building his

9    own business.  So he's also entrepreneurial.

10          And I bring those things up, Your Honor, to

11   indicate that he does have a skill set and skills that

12   will and can make him a productive member of society.

13   And at the conclusion of whatever sentence Your Honor

14   imposes, again even if it's the mandatory minimum, would

15   be substantial.

16          He has -- he's been incarcerated now for just

17   about 61 months in the Federal Detention Center, which,

18   as Your Honor knows, is a more difficult circumstance I

19   think to be incarcerated in than in a penitentiary or in

20   a -- once he's a sentenced prisoner, for the reason that

21   the programs are limited.  The movements are more

22   limited.  And that's a lengthy period of time partly

23   exacerbated by the delays in the case by Covid that have

24   caused him to be in that situation.

25          But what I will say is that he has at least

1   attempted to make productive use of his time.  I did

2   notice that there were some, what I'll terms minor

3   infractions referenced in the presentence report while he

4   was in the FDC, but he has made productive use of his

5   time.

6          He did obtain his GED in June of 2021 while at

7   the FDC.  He also taught classes where he helped nine

8   other inmates obtain their GEDs while at the FDC.  He

9   completed numerous education packets in science, geology,

10  health and anatomy as he advised me.

11         And, frankly, he did not submit those packets

12  to obtain, you know, credit or time or certificates.  He

13  did it for the educational growth and personal growth on

14  his own.  That goes to the fact that he can and will be a

15  productive member of society in the future.

16         His family is not and could not be here today.

17  As Your Honor heard earlier today, his stepfather passed

18  away recently.  And as Your Honor is also aware in the

19  presentence report, his mom was hesitant to be here

20  because of the emotional nature of the circumstances, but

21  his family has remained supportive, his mother and his

22  three sisters and his brother.

23         And I emphasize that for the reason that when

24  people have a supportive support structure that again,

25  once they're released from imprisonment, does I think,

**A.031**

1    you know, help somebody stay on the right path and become

2    a productive member.

3          Given the nature of his offense, it's clear

4    that Mr. Crocker can benefit from and he's expressed to

5    me that he would like to ask the Court to recommend that

6    he be enrolled in a therapeutic program while in the FDC

7    and also as part of his supervised release to help deal

8    with his underlying mental health issues.

9          As Your Honor knows, they include depression

10   as outlined in the presentence report.  It seems like

11   he's kind of dabbled in treatment in the past, and it's

12   been sporadic, and he wasn't as committed to it in the

13   past, but he -- and he does plan to address Your Honor,

14   so I won't step too much on what I expect him to say.

15   But he does and will talk to the Court about the

16   difference the last five years being incarcerated have

17   made to his mental state and how he's come to realize

18   certain things.

19          I think again having the support structure of

20   receiving therapy over a substantial period of time

21   during incarceration and post-incarceration again can

22   help minimize and mitigate the risks of recidivism

23   especially in offenses of this nature.

24          The nature and circumstances of the offenses,

25   of course, are, I'll use the word horrific I guess.  And,

**A.032**

1    again, I understand I'm his advocate, but I have to be

2    candid and that's one of the factors the Court has to

3    consider, and they cause devastating affects.  Mr.

4    Crocker's aware of that as well, so that's a factor I'm

5    using it in here.  I'm sure it will weigh heavily on the

6    Court.  But again, I think that can respectfully be taken

7    into account even by a sentence at the lowest end of the

8    guideline range here of 15 years statutory minimum.

9              Mr. Crocker, although he just had a couple of

10   corrections today, did promptly confess to the FBI.

11   Although his guilty plea was not as prompt, there were a

12   number of delays, including switching counsel, Covid and,

13   frankly, the difficult pill it is for -- you know, I've

14   been doing this for almost 35 years now on both sides, as

15   an AUSA and a defense lawyer, and it's a difficult pill

16   for even somebody who acknowledges their guilt to swallow

17   a 15-year mandatory minimum and 30 years statutory

18   maximum.

19             And some of that I think explains why Mr.

20   Crocker was kind of late to the party in actually

21   pleading guilty.  But I do recognize that he very

22   candidly admitted his guilt to the FBI immediately upon

23   being confronted by them.  And has accepted his

24   responsibility throughout the guilty plea and probation

25   process.  And I'd ask the Court to consider that as well

**A.033**

1    as a significant factor.

2         Bear with me one moment, Your Honor, while I

3    try to read the rest of my scribble that's here.

4         As Your Honor knows from Paragraphs 118 and

5    119 of the presentence report, Mr. Crocker is starting to

6    come to the realization that potentially he -- not only

7    his sister, but he also might have been in some respects

8    sexually assaulted as a child, and he's got some feeling

9    of repressed memory in that regard.  He has been dealing

10   with that to some extent in his therapy sessions within

11   the Bureau of Prisons.

12        And your Honor, I see the history of that

13   under the mental health history of the presentence report

14   in terms of his interaction with the Bureau of Prisons.

15   That's in Paragraphs 118 and 119 of the PSR.

16        He will also not lead an easy life upon

17   release from incarceration regardless of what sentence

18   Your Honor imposes upon him.

19        As Your Honor knows, he will essentially be

20   required to live as a registered sex offender probably at

21   the highest tier in terms of public reporting once he's

22   released from incarceration.  That will certainly affect

23   his ability to move about freely.  It will certainly

24   affect his, you know, ability to participate in certain

25   types of jobs and professions and will not make life easy

**A.034**

1    for him.

2            I think that that's a factor the Court can

3    consider as well that while many people on supervised

4    release have much more freedom, he will have much less

5    freedom than many.  I'm not saying that's inappropriate,

6    I'm just saying that that's a fact that should be

7    recognized in fashioning an appropriate sentence.

8            So for all of those reasons, Your Honor, I

9    would request respectfully that a 15-year sentence is

10   sufficient but not greater than necessary to meet all of

11   the intended purposes of sentencing.

12           I am happy to answer any questions the Court

13   has.

14           **THE COURT:**  Sure.  It's true that he gave a

15   statement soon after his arrest and admitted to lots of

16   aspects of the crime that brings us here, but he also

17   seemed to have minimize, to some extent and throughout his

18   attempt, I think at times, to justify what he did and not

19   take the blame and responsibility on himself.

20           There's all sorts of troubling horrendous

21   things in this case, and we'll talk about them, but among

22   others, if he really hasn't fully accepted responsibility

23   and understand just how horrendous what he did is, that

24   makes him even more dangerous going forward.

25           Can you help me with that?

1    **MR. CIPPARONE:**  I can say in my conversations

2    with him he has exhibited and expressed to me a change in

3    that, I'll use the word, attitude or position, over the

4    last five years.  He's said -- and he does intend to

5    address I think in part with Your Honor that aspect of it.

6         So again, I don't want to speak for him.  But

7    I can say that at least what he articulated to me is, and

8    in fact that's maybe one of the things I did make a note

9    about that.

10        With respect to Paragraph 16, he also did want

11   me to clarify he was in no way blaming his daughters for

12   initiating conduct or any of that.  So that's been kind

13   of recurrent and an evolutionary process, I think, in

14   terms of the conversations he and I have had.

15        I have seen him kind of grow, for lack of a

16   better word, from that position into what I think, at

17   least as outsiders and not in his head, so to speak, we

18   would perceive of a more understandable position and a

19   less horrendous position to be taken.

20        But again, he does plan to address the Court,

21   and I think anything I say will probably not be as

22   effective as whatever he says to Your Honor in that

23   regard.

24        **THE COURT:**  Okay.  That was my only question

25   for you.

**A.036**

1       If Mr. Crocker wishes to speak, he should come

2  forward now and do that.

3       **MR. CIPPARONE:**  Thank you, Your Honor.

4       **THE COURT:**  Good afternoon.

5       **THE DEFENDANT:**  Good afternoon, Your Honor.

6       First of all, I'd like to apologize to the

7  Court for time wasted, and I'd also like to apologize to

8  my daughters and their mother.  I would also like to

9  apologize for everybody that was a part of it and my

10 family, my mother.

11      Because of what I've done, the family has been

12 separated and not only have I not seen my daughters in

13 five years, my -- they haven't seen the rest of their

14 family because of my actions.

15      I want to let you know that I recognize now

16 that more than ever that what I've done was terrible, and

17 I didn't notice how terrible it was at the time.

18      But the only reason why I didn't jump straight

19 towards a guilty plea is because I didn't want to plead

20 guilty to exposing my children on the Internet.  That

21 wasn't my intentions.

22      I made some mistakes and other mistakes

23 happened, but I own up to all of it, ultimately.  But I

24 just wanted to let the courts know that my intentions

25 were not to exploit my children.

1          Being incarcerated was not in vein.  I now

2    realize how important my liberty was and how important it

3    was to be a great citizen to the United States.  And now

4    I wish that I could have that opportunity again as soon

5    as, you know, possible to be a model citizen to not only

6    help people I know but to be somebody for generations,

7    you know, to be there for people I don't know.

8          Excuse me for my choppy speech.  It's just a

9    little --

10          I'm more sorry for my children, my mother and

11   my father, my stepfather who passed.  My kids didn't get

12   to spend his last five years while he was alive, and I

13   robbed him from that, and I do notice that.

14          But I mention all that to ask for your mercy

15   and forgiveness.  Hopefully, one day I can get

16   forgiveness from everybody else.  I believe as soon as I

17   can get released then allow -- hearts can be healed.  A

18   lot of healing can begin for not just myself but a lot of

19   other people that I've affected due to the situation.

20          I care about my grandmother and mother, who

21   are affected greatly from this, and I think it physically

22   deteriorated my grandmother.  My uncle also, who

23   basically died two months ago, was just waiting on me to

24   come out.

25          It's just what I've done is put a great impact

**A.038**

1    on a lot of people, and I just want to find any way

2    possible to just end the mourning and sorrow and just

3    make things better again.

4            It all started when I lost the love of my

5    life, and that's what triggered a lot of depression.  It

6    put the cherry on top and it made me, kind of -- it

7    triggered my depression.  It made me do things abnormal.

8            I'm sure you're aware of my -- the situation,

9    the situation is something I would have never done.  All

10   these things happened all around the same time frame.

11   It's proof to show that I was going through a mental

12   breakdown, and I was not myself.

13           I just wish things could have turned out

14   differently, but I can assure you that this will never

15   happen again.  And I'm not a dangerous person.  I'd

16   rather help than harm anybody, and that's how I've been

17   all my life.

18           That's it, Your Honor.

19           **THE COURT:**  Okay.  Thank you.  You can have a

20   seat.

21           Mr. Weede, we will hear the Government's

22   presentation.

23           **MR. WEEDE:**  Yes, Your Honor.  Your Honor, I

24   want to begin by first acknowledging the girls' mother

25   Ms. REDACTED OF NAME .

**A.039**

1          Ms. REDACTED OF NAME, would you mind standing up please.

2          THE COURT:  Thank you very much for being here,

3     we really do appreciate it.

4          MR. WEEDE:  Ms. REDACTED OF NAME, we've had a number of

5     discussions leading up to today, and she's elected to have

6     the Government speak for her at sentencing.

7          I also want to acknowledge Mr. Alex REDACTED OF NAME.

8     Would you stand up, sir, please.

9          THE COURT:  Mr. REDACTED OF NAME, thank you also for

10    being here.

11         MR. WEEDE:  Mr. REDACTED OF NAME is the girls'

12    grandfather, and I believe he has a few words he would

13    like to say.

14         THE COURT:  Come up, Mr. REDACTED OF NAME, please.

15         MR. REDACTED OF NAME:  Good afternoon, Your Honor.

16         THE COURT:  Thank you for being here.

17         MR. REDACTED OF NAME:  Thank you.  First, excuse my

18    voice.  I just had surgery.

19         THE COURT:  Take your time.

20         MR. REDACTED OF NAME:  Excuse me.  First, I want to say

21    that I've known Toron since Toron was 16 -- I'm sorry, 17.

22    And I've always tried my best since I met Toron to be a

23    father figure to him, not only my daughter's boyfriend at

24    the time but a father figure to him as well, try to steer

25    him straight, try to keep positive in his voice, in his

1   mind.  I was helping him with his business, trying to get

2   recognized.  I was helping him trying to get a part in a

3   movie and everything.  I was doing a lot of things to help

4   Toron, trying to keep everything positive.

5            My daughter, that's who she wanted to be with,

6   she was happy with him.  So I said okay, let me make sure

7   this guy is right; he's the right guy for my daughter.  I

8   did everything to try to help him.

9            When my granddaughters were born, basically

10  what this guy did was -- when they went through their

11  split, he tried to keep my grandkids from me.  I said

12  listen, I'm here for you.  It's just to make sure that

13  it's fair on each side.  You guys not together anymore,

14  let me bring my granddaughters to their mother to spend

15  time with them, and I'll bring them back to spend time

16  with you.

17           He fought me tooth and nail trying to keep my

18  granddaughters away.  Called the cops so many times

19  because fighting back and forth.  His mother involved

20  fighting back and forth, keeping my grandkids from my

21  daughter.  Now my daughter, she's like he can spend time

22  with them all he wants, I don't mind.  But he kept trying

23  to keep them away.

24           When I saw basically -- I'm at Five Below.  I

25  go there to pick up something.  My granddaughters, at the

**A.041**

1    time, seven and nine in there by themselves.

2              I'm like:  What are you doing up here by

3    yourself?

4              Oh, well, dad dropped us off, so we can go

5    shopping.  He'll be back to pick us up.

6              I put them in the car with me, took them with

7    me.

8              If you're doing so much, if you care so much

9    about my grandkids, why would you leave them like that?

10   Why would you leave them in the store by themselves

11   unsupervised?  Anybody could have walked in, anything

12   could have went on, anything.

13             He didn't care about my grandkids like that.

14   He was all for his needs, all for his sadistic behavior.

15             It hurt my heart, you know, because they were

16   living with me for a year at the time when they split up.

17   And then I had seen a difference in how they would act

18   being when they came home, didn't know what it was.  Now

19   I know.  And it hurts my heart that I was not there to

20   protect them.

21             All this is a show.  This is nothing but a

22   show that Toron is trying to put on, so sympathetic; no

23   he's not.  I gave him many times to act like a man, be a

24   man, do things right.  He didn't want to do that.

25             He told me about his father and why his father

**A.042**

1   is in prison for the same situation.  But I always told

2   him, you don't have to be that way either, you can be

3   better than that.

4           My granddaughters, they're going to need some

5   help.  And I know they're going to need some help.  So

6   for him to say -- and for 15 years, no.  I'm not a judge.

7   Your Honor, I'm not trying to do your job, I'm not trying

8   to do your job as a prosecutor, but 15 years, no.  That

9   was two girls, two.

10           By the grace of God and the love and support

11   from me, their grandmother, their family is why they're

12   thriving.  Still having a little couple issues right now,

13   but they'll get there.

14           And the only thing I'm asking this Court to do

15   is to create a fair sentence for two girls.  Not one,

16   two.

17           Thank you, Your Honor.

18           **THE COURT:**  Thank you very much.  I appreciate

19   that.

20           Mr. Weede.

21           **MR. WEEDE:**  Your Honor, as I typically do

22   before any sentencing hearing, I read through the PSR and

23   I know the Court has.  I know the defense has.

24           And based on my years as a prosecutor, except

25   in cases where someone was killed, this is the most

**A.043**

1    serious offense conduct I have seen.

2              Now, notably as the Court also observed, the

3    Guidelines recommend a life sentence.  But based on the

4    defendant's guilty plea, his exposure is capped at 30,

5    and that's what the Government's recommendation is in

6    this case.  A 30-year sentence is warranted here to

7    provide just punishment, to promote respect for the law

8    and to protect the public.

9              Now in my remarks I'm not going to go --

10   especially in light of the victim's mother and

11   grandfather being in the gallery, I'm not going to go

12   into too much detail.

13             I know the Court has viewed the videos and

14   read the PSR, and the PSR is comprehensive.  But I want

15   to generally describe certain key aspects of the

16   defendant's conduct and why the Government views it as so

17   serious because it drives that recommendation in this

18   case.

19             First, let's just start out with the defendant

20   sexually molested his kids.  And sexually praying on

21   children is one of the most, I'll use Mr. Cipparone's

22   word, horrific things that an adult can do.

23             But these weren't just kids.  These were young

24   kids.  The girls were eight and ten at the time of the

25   defendant's arrest.  And as the defendant would admit,

1    he's walking that back now a little bit, but this had

2    been going on for years.  And children that young are

3    too -- they're just unable to protect themselves in any

4    real way.  They're not able to psychologically protect

5    themselves, they're not able to physically protect

6    themselves.  These girls were vulnerable.

7        And then let's talk about who the defendant

8    was in relation to these girls.  They were his kids.

9    Mr. REDACTED OF NAME knows, Ms. REDACTED OF NAME knows what a job of a parent

10    is.  The job of a parent is to protect your kids.  It's

11    not to pray on them.  And that made the crimes here just

12    all the more heinous.  The defendant was entrusted with

13    that parent relationship, and he betrayed that trust.

14        By the way then, as the Court notes, kind of

15    blamed it on them when he initially got caught and

16    explained his conduct to the agent.

17        Then he filmed it.  So he's not only molesting

18    his daughters, he's exploiting them by filming it, and

19    he's doing it so he can watch it later.  This filming

20    wasn't incidental.  The Court knows from looking at the

21    videos there he is staging them, he's putting them in

22    poses; he is directing what's happening in these videos.

23        And this conduct was longstanding.  Even if

24    you take the most recent of defendant's version of

25    events, this goes back two years, two years that he's

1    doing this to his daughters.

2          And finally, I think it's worth mentioning

3    that the defendant has demonstrated that he's sexually

4    interested in other children.

5          How do we know this?  We know this because if

6    you look at what's found on his Gateway computer, you'd

7    find child pornography videos of other kids.  You find

8    child pornography images of other kids.  You'd find

9    internet artifacts consistent with him searching for

10   videos or searching for sexy eight year olds exploited by

11   teens and little black girls naked.

12          And perhaps most troubling for the future is

13   that one of the videos recovered from the defendant's

14   phone shows him going into a room, this is on PSR

15   Paragraph 27 at 3:27 a.m. approximately, according to the

16   phone.  He enters a bedroom, four girls are asleep.

17   Minor A, his youngest daughter, is nude.  He zeros in.  I

18   said I wouldn't get into the details, I'm not.

19          But important to the issue here, is he goes to

20   another girl who is asleep on the bed, who is not his

21   daughter, and he attempts to pull down her sweatpants.

22   The video ends just as she stirs.  And he does this at a

23   time period when he's making other videos of each

24   daughter on August 19, 2016 and August 20, 2016.

25          Why does this matter?  It shows that if given

1    the opportunity, there is a serious danger that the

2    defendant will re-offend.

3           And there's one point that I want to highlight

4    on this, and it came from the defendant's statement just

5    now.  He said it was not his intent to exploit his kids.

6           I'm hopeful, I'm very hopeful that he will

7    engage in therapy in the future, and that he will find a

8    way to change his mindset.

9           As of right now, he doesn't think what his

10   intent was for those two years was to exploit his own

11   children.  What else could it have been?

12          I want to conclude by saying that the

13   Government does not take a recommendation of 30 years

14   lightly, that's a long time.  That's a very long time,

15   but a very long sentence is warranted in this case.

16          It's to reflect how serious that conduct was.

17   It's necessary to punish him, and it's necessary to

18   protect the public.

19          Your Honor, that's all I have from my prepared

20   remarks.  If the Court has questions, I'm prepared.

21          **THE COURT:**  I have no questions.  Thank you.

22          **MR. WEEDE:**  Thank you, Your Honor.

23          **THE COURT:**  Mr. Cipparone, is there anything

24   you'd like to add?

25          **MR. CIPPARONE:**  No, Your Honor.

1      **THE COURT:**  Thank you to both counsel for your

2   arguments and thank you especially to Ms. REDACTED OF NAME and

3   Mr. REDACTED OF NAME for being here and for Mr. REDACTED OF NAME for sharing

4   those thoughts with us.

5      Let me start by saying I've considered the

6   relevant factors that the law requires me to consider in

7   making sentencing decision.  They're set out in the

8   Statute Title 18 United States Code, Section 3553(a).

9      I'm required to begin with the sentencing

10   guidelines, which here are not really guidelines.  They

11   are just a data point.  The guidelines call for a

12   sentence of life imprisonment.

13      Under ordinary circumstances the guidelines

14   would be a range, and they would be advisory, but here,

15   and I think it's just one of many indications of how

16   horrible the defendant's crime is that brings us all

17   here, the guidelines boil down to, as I said, just one

18   point, and that point is life imprisonment, which is

19   basically the most stringent sentence that our system

20   has, other than a capital offense.

21      But under the law that life imprisonment data

22   point is my starting point.  It is, however, of course, a

23   sentence that I'm not permitted under law to impose under

24   the circumstances of this case, given that the statute of

25   conviction does not permit me to do so.

**A.048**

1      Instead the statute of conviction mandates

2  that I impose at least 15 years of incarceration, that's

3  a statutory mandatory minimum that I cannot go below.

4  And that same statute limits the Court to imposing no

5  more than a maximum of 30 years of incarceration.

6      I must, as the law also requires, make an

7  individualized assessment of the sentence based on the

8  facts presented, and, ultimately, I am obligated to

9  impose a sentence that is sufficient but not greater than

10  necessary to achieve the purposes of sentencing.

11      And having done all of that, I have found that

12  the criminal conduct that Mr. Crocker engaged in is, in

13  my experience, just about as bad as it gets.  It is

14  certainly among the two or three worst types of criminal

15  conduct that I have seen in my years involved in

16  prosecution and judging.

17      It is, more importantly, I think as bad as one

18  can do under the statute of conviction, that is I think

19  this criminal conduct is as bad as anyone has or could

20  conceivably commit under the statute of conviction.  And

21  it is, I think, as bad as the sentencing guidelines and

22  the makers of the sentencing guidelines could have

23  envisioned.

24      So for those reasons and others that I'm going

25  to explain, I have decided to impose the statutory

**A.049**

1   maximum here, which is 30 years.  That is going to be my

2   sentence for Mr. Crocker.

3           And let me further explain why.  I've

4   considered, as the law requires, the nature and

5   circumstances of the offense, the need for the sentence

6   imposed to reflect the seriousness of the offense to

7   promote respect for the law and to provide just

8   punishment for the offense.

9           I will follow counsel's lead and not speak at

10  a great length or in any great detail about the nature of

11  Mr. Crocker's criminal offense, but that is not because

12  what he did isn't serious, it's because it is so serious.

13  It is so heinous.  It is hard to even find the words

14  strong enough to categorize and characterize with any

15  accuracy just how horrific what Mr. Crocker did is.

16          "Horrific" being Mr. Cipparone's word.

17  Mr. Crocker himself described his conduct as "terrible,"

18  and terrible is an understatement, but I'm glad he

19  recognizes at least that it was terrible.

20          He victimized his two daughters beginning when

21  they were very young, and what he did is among the most

22  horrendous criminal acts that one human being can commit

23  against another.

24          The horrible details are set out in

25  comprehensive detail in the presentence report and

1    elsewhere in the record.

2         I did, in connection with motion hearings,

3    have to watch some of the video evidence.  It's all --

4    it's just truly horrendous.  Again, words do not really

5    do justice to it.  But it's enough to say, and this is a

6    quote from the Government's presentence memo, "The

7    defendant sexually molested his two preteen daughters for

8    years.  He also repeatedly filmed this activity saving

9    the videos on his phone and in a Dropbox account."

10        Those two sentences are -- they capture what

11   the defendant did, and it alone is horrendous, just that

12   two sentence descriptions.

13        I don't want to go much further because the

14   defendant victimized most directly his two daughters, and

15   they could not have been more vulnerable victims, his

16   young daughters.

17        As the Government rightly points out, they had

18   no ability to defend themselves in any way at all.  If I

19   were to go into any more detail in open court, although

20   unintentionally, this transcript could be further

21   victimization of those young girls, and I don't want to

22   be part of that.

23        I also think it's important to point out that

24   the victims' mother and grandfather who are here, they

25   are victims, indirect victims as well, by Mr. Crocker's

**A.051**

1  conduct, and they do not need to hear any great detail

2  either.

3       I do want to note some of the features of the

4  conduct that the Government also highlighted just to,

5  again, emphasize why this is truly in my mind a top of

6  the guideline range situation I confront.

7       The defendant's conduct was longstanding,

8  stretching over at least two years and possibly five or

9  six years.  The defendant groomed his daughters for

10 sexual favors.  The defendant actively directed his

11 daughters in the videos he made, and the defendant has a

12 demonstrated sexual interest in young children.  He also

13 did distribute those videos.

14      He says today he did not intend to do that,

15 and that he more generally did not intend to exploit his

16 daughters.  There's really no evidence to support that

17 that is his intent or was not it, but the record fully

18 indicates that it was his intent to exploit his daughters

19 and to distribute the evidence of his exploitation.

20      But even if that were not his intent, the fact

21 is that those videos exist, they're out in the world,

22 they have evidently been today recovered in more than 300

23 child pornography collections, and, sadly, it's hard to

24 imagine that we're ever going to be able to remove them

25 entirely from the world.

**A.052**

1           And so those girls will be victimized again

2     and again and again.  And that is all the responsibility

3     of Mr. Crocker.

4           The Government was prepared to prove these

5     crimes beyond a reasonable doubt to a jury.  And

6     dutifully in the middle of a pandemic, the jury pool came

7     into this courtroom and were here and willing to do their

8     public duty and evaluate the evidence which would have

9     required them to view the child pornography.  And

10    Mr. Crocker had a right to require us to bring in a jury

11    and have them be prepared to do that.  But that also

12    would have been, had the trial gone forward, another

13    occasion for victimization.

14          While the defendant admitted at least some

15    aspects of his criminal conduct, he did also try to put

16    blame on others, including his daughters, who are not at

17    all to blame but are the victims here.

18          So all of that has factored into my view that

19    this is a top of the guidelines situation that I

20    confront.  Mr. Crocker deserves severe punishment of the

21    maximum penalty the law permits me to impose which is 30

22    years imprisonment.

23          I've also considered, as I'm required, the

24    need for my sentence to adequately deter the defendant

25    and others and to protect the public.  The defendant does

1    have several drug-related misdemeanor offenses from back

2    in 2007 and a theft conviction relating to stealing money

3    from a bank in 2015.

4         Even without any criminal record, the public

5    would need to be protected from Mr. Crocker.  And the

6    only protection I can see here is the statutory maximum

7    prison sentence followed by a lengthy sentence of

8    supervised release.

9         That he has committed other crimes previously

10   only makes it all the more evident that he deserves the

11   most time I am permitted under the law to give him.

12        The law requires that I consider the other

13   personal characteristics of the defendant.  As we've

14   heard, he's 36 years old, he was born and raised here in

15   Delaware, principally by his mother.  His father was

16   convicted of sexually abusing a member of his family and

17   went to prison when the defendant was only six years old.

18        It was, as defense counsel states, a difficult

19   upbringing.  And there are indications that the defendant

20   may have, himself, been a victim of child sexual abuse.

21        He had a long-term relationship with the

22   mother of his two daughters, the victims in this case,

23   and he's had other adult relationships.  But as I said,

24   the evidence also indicates that he's sexually attracted

25   to minor females.  We know that given the evidence

**A.054**

1    referred to by the Government and the evidence of other

2    child pornography, in addition to that which he created,

3    which was found in his possession when he was arrested.

4    He poses a continuing danger.

5              Mr. Crocker's history with his physical,

6    mental and emotional health issues are set out in detail

7    in the presentence report.  I've considered them, and I'm

8    hopeful that he will receive treatment while he is

9    serving the rest of this sentence.

10             He has completed his GED while detained.  He

11   has a mixed record during his lengthy period of pretrial

12   detention, engaging in some activities but also having

13   some behavioral infractions.  He did have some

14   significant employment including running his own handyman

15   service, and as we heard, he has some carpentry skills.

16   He does have some continuing family support.

17             I've had to consider my sentence not create

18   any unwarranted sentencing disparity, but I see no risk

19   of that.  With the help of the presentence report and the

20   chief probation officer, I looked at some of the

21   sentences received or given in this District for this

22   same type of offense, and I found that I was not the only

23   one, and this is not the first occasion, where a

24   defendant has been given the statutory maximum.

25             And in any event, I see no basis for any

**A.055**

1    argument that my sentence creates any unwarranted

2    sentencing disparity with any others.  I've considered

3    the interest of rehabilitation and any, essentially,

4    requests for a variance.

5              In that regard, I recognize that the defendant

6    served an awfully long time as a pretrial detainee and

7    did so during a period of a global pandemic.  It's

8    possible that with a different set of circumstances and a

9    different guideline range, perhaps that would be a basis

10   to bring his sentence down somewhat.  But here, it does

11   not move it from its firm place at the top of the

12   guidelines.

13             Mr. Crocker told us I wish things had turned

14   out differently, and, boy, we all desperately wish that

15   they had.  But the fact that they didn't is solely the

16   responsibility of Mr. Crocker.

17             Instead of being a father to his children, he

18   was a predator to them, and he abused them in the most

19   heinous way any one of us could imagine.  And I think he

20   fully deserves the sentence that I intend to impose.  Let

21   me formally state that sentence.

22             It is as pursuant to the Sentencing Reform Act

23   of 1984, it is the judgment of the Court that the

24   defendant, Toron Crocker, is hereby committed to a term

25   of imprisonment of 360 months on Count 1.

**A.056**

1          The Court has considered the factors set forth

2     under 18 USC Section 3553(a), the presentence

3     investigation report, the submissions of the parties and

4     finds this sentence to be reasonable and appropriate.

5          Upon release from imprisonment, he shall be

6     placed on supervised release for a period of ten years.

7     Within 72 hours of your release from the custody of the

8     Bureau of Prisons, you shall report in person to the

9     probation office in the district to which you are

10    released.

11         While on supervised release, you should not

12    commit another federal, state or local crime.  You shall

13    comply with the mandatory and standard conditions that

14    have been adopted by this Court.  And you shall comply

15    with the special conditions listed in Paragraphs 135

16    through 138 of the presentence report, which includes sex

17    offender specific conditions.

18         The Court is imposing these special

19    conditions, including the prohibition of Internet usage,

20    due to the nature of the offense.

21         The Court notes for the record your offense

22    involved using the Internet and Internet capable global

23    devices.  The Court finds these conditions are required

24    to reduce the risk of recidivism and address treatment

25    needs related to the offense of conviction.

**A.057**

1          The Mandatory Restitution Act applies to this

2   offense; however, no pecuniary harm has been reported to

3   the Court.

4          It is further ordered that you shall pay to

5   the United States a special assessment of $100, which

6   shall be due immediately.  If the Court finds you do not

7   have the ability to pay the fine, the Court will waive

8   the fine in this case.

9          Counsel, do you know of any reasons other than

10  those already stated why sentence should not be imposed

11  as announced?

12          **MR. WEEDE:**  No, Your Honor.

13          **MR. CIPPARONE:**  No, Your Honor.

14          **THE COURT:**  Is there any issue you believe you

15  have raised to which I may not have given meaningful

16  consideration?

17          **MR. WEEDE:**  No, Your Honor.

18          **MR. CIPPARONE:**  No, Your Honor.

19          **THE COURT:**  It is then the order of this Court

20  that sentencing be imposed as stated.  The clerk's office

21  shall prepare the judgment, and my deputy clerk shall

22  enter the judgment of conviction.

23          Mr. Crocker, any right you might have to

24  appeal the sentence that I have imposed is limited, if

25  not eliminated, by the appellate waiver provision in your

**A.058**

1  plea agreement.  Nonetheless, you should discuss with

2  your attorney whatever right to appeal you may have.  Any

3  appeal would have to be filed no later than 14 days after

4  I enter the written judgment of conviction.

5           If you do choose to file an appeal, and can

6  not afford the cost of paying that appeal, you can ask

7  for permission to file that appeal without paying those

8  costs.

9           I have in front of me a motion of the United

10 States for preliminary order for forfeiture.  I will be

11 granting that.

12          Mr. Weede, is there anything further in this

13 matter?

14          **MR. WEEDE:**  Your Honor, I just have a motion

15 order to dismiss the remaining counts pursuant to the plea

16 agreement, if I may hand that up.

17          **THE COURT:**  You can hand that up.  I will be

18 granting that as well.

19          Mr. Cipparone, is there anything further in

20 this matter?

21          **MR. CIPPARONE:**  No, Your Honor.

22          **THE COURT:**  Thank you very much for taking on

23 this assignment today.

24          We will be in recess.

25   (The proceedings concluded at 2:07 p.m.)

**A.059**

1

2

3              <u>CERTIFICATE OF COURT REPORTER</u>

4

5        I hereby certify that the foregoing is a true and

6   accurate transcript from my stenographic notes in the

7   proceeding.

8
                                    <u>/s/ Bonnie R. Archer</u>
9                                   Bonnie R. Archer
                                    Official Court Reporter
10                                    U.S. District Court

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**A.060**

1

1          IN THE UNITED STATES DISTRICT COURT

2          IN AND FOR THE DISTRICT OF DELAWARE

3                        - - -

4   UNITED STATES OF AMERICA,        :     CRIMINAL ACTION
                                     :
5   v                                :
                                     :
6   TORON CROCKER,                   :
                                     :
7          Defendant.                :     NO. 17-10-LPS

8                        - - -

9                     Wilmington, Delaware
                   Tuesday, October 12, 2021
10                  *Change of Plea Hearing*

11                       - - -

12  BEFORE:      HONORABLE LEONARD A. STARK, U.S.D.C.J.

13  APPEARANCES:            - - -

14

15          UNITED STATES ATTORNEY'S OFFICE
            BY:  SHAWN WEEDE, ESQ.,
            And GRAHAM ROBINSON, ESQ.
16          Assistant United States Attorneys

17                  Counsel for Government

18
            TORON O. CROCKER
19
                    Pro Se Defendant
20
                and
21
            LAW OFFICES OF ROCCO C. CIPPARONE, JR.
22          BY:  ROCCO C. CIPPARONE, JR., ESQ.
                  (Haddon Heights, New Jersey)
23
                    On behalf of Toron Crocker
24

25                          Brian P. Gaffigan
                            Registered Merit Reporter

**A.061**

2

```
 1                        - oOo -

 2                 P R O C E E D I N G S

 3              (REPORTER'S NOTE:  The following change of plea

 4      hearing was held in open court, beginning at 4:41 p.m.)

 5              THE COURT:  Have a seat.

 6              MR. WEEDE:  Good afternoon, Your Honor.

 7              THE COURT:  Mr. Weede.

 8              MR. WEEDE:  Shawn Weede again for the United

 9      States.

10              Your Honor, in the period of time after Your

11      Honor left the bench, Mr. Crocker and I, along with his

12      stand-by counsel, had further discussions.  Mr. Crocker has

13      indicated his intent to accept a plea agreement that was

14      essentially a version that was forwarded to Mr. Cipparone

15      quite some time ago.  We revised it to take away the third

16      point in light of the hour but other than that, it remains

17      the same.

18              I have a copy of it to hand up to the Court, if

19      I may.

20              THE COURT:  You may, although I have a copy as

21      well without signature on it, but if you have the original.

22              MR. WEEDE:  Your Honor, I do have the original

23      with signatures on it.  If I may hand that up and actually

24      trade with the Court or not?

25              THE COURT:  Yes.
```

**A.062**

1          MR. WEEDE:  That's why I'm asking.  I have one

2    copy for me, and I know the Court is going to ask me to

3    summarize, but I would like the defendant to have a copy

4    with him.

5          THE COURT:  Let's just trade.

6          MR. WEEDE:  May I approach?

7          THE COURT:  You may.

8          MR. WEEDE:  I'll switch with you.  Thank you

9    much.

10         (Documents passed forward.)

11         THE COURT:  Mr. Crocker, is it correct that you

12   now intend to enter a guilty plea pursuant to this plea

13   agreement?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Okay.  Let me have you come back to

16   the podium, please.

17         And I will ask that you remove the mask so that

18   we can make sure we hear each other.  I'll do the same.

19         As you may know, I have a responsibility before

20   entering or accepting any guilty plea to make sure it is a

21   knowing and voluntary plea.  In order to do that, I'll have

22   you placed under oath, and then I will ask you a fairly

23   lengthy series of questions.  It's important that you answer

24   all of my questions truthfully because any false answers can

25   be used against you in a separate prosecution, for instance,

4

1    for perjury or making a false statement.  Do you understand

2    all that?

3                    THE DEFENDANT:  Yes, Your Honor.

4                    THE COURT:  And I know that you are continuing

5    to proceed pro se.  Mr. Cipparone is here.  He has been

6    through this many times.  If you want to confer at any time

7    before answering my questions, just let me know; okay?

8                    THE DEFENDANT:  Yes, Your Honor.

9                    THE COURT:  Okay.  Let's administer the oath.

10                   (Defendant Toron Crocker placed under oath.)

11                   THE COURT:  Okay.  Thank you.

12                   For purposes of our record, please state and

13   spell your full name.

14                   THE DEFENDANT:  T-o-r-o-n C-r-o-c-k-e-r.

15                   THE COURT:  Middle initial O?

16                   THE DEFENDANT:  Oh, yes.

17                   THE COURT:  What is your date of birth?

18                   THE DEFENDANT:  7/13/85.  1985.

19                   THE COURT:  So how old are you?

20                   THE DEFENDANT:  I'm 36.

21                   THE COURT:  How far did you get in school?

22                   THE DEFENDANT:  I, I completed my GED.

23                   THE COURT:  Okay.  Do you speak and understand

24   English?

25                   THE DEFENDANT:  Yes.

**A.064**

|       |                                                              |
|-------|--------------------------------------------------------------|
| 1     | THE COURT:  Have you ever been treated for any               |
| 2     | mental illness or addiction to alcohol or drugs of any kind? |
| 3     | THE DEFENDANT:  Yes.                                          |
| 4     | THE COURT:  Okay.  Are you currently under such              |
| 5     | treatment?                                                    |
| 6     | THE DEFENDANT:  No.                                           |
| 7     | THE COURT:  About how long ago would say you                |
| 8     | stopped being treated for any of those things?              |
| 9     | THE DEFENDANT:  Um.  About five years ago.                   |
| 10    | THE COURT:  Okay.  Today, are you under the                 |
| 11    | influence of any alcohol, medication or narcotic drug of any |
| 12    | kind?                                                         |
| 13    | THE DEFENDANT:  No, sir.                                      |
| 14    | THE COURT:  Do you feel like you understand what            |
| 15    | is going on here?                                            |
| 16    | THE DEFENDANT:  Yes, sir.                                     |
| 17    | THE COURT:  Mr. Weede, I assume you have no                 |
| 18    | concerns about the defendant's competence?                    |
| 19    | MR. WEEDE:  No, Your Honor.                                   |
| 20    | THE COURT:  And Mr. Cipparone, even though you              |
| 21    | are not here an attorney, you have interacted with the      |
| 22    | defendant.  Any concerns about his competence?              |
| 23    | MR. CIPPARONE:  No, Your Honor.                              |
| 24    | THE COURT:  Okay.  And I'll just state for the              |
| 25    | record, I have interacted with Mr. Crocker all day as well. |

**A.065**

1  He has been representing himself, and I have no concerns

2  about his competence.

3          Mr. Crocker, have you had a chance to look at

4  the Indictment, that is, the formal written charges against

5  you in this case?

6          THE DEFENDANT:  Yes.

7          THE COURT:  All right.  Let talk about the plea

8  agreement which was handed up to me.  It's nine pages plus a

9  sealed Attachment A.  The ninth page has various signatures

10  on it, one of which appears to be yours.  Did you in fact

11  sign this plea agreement?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  And before signing it, had you

14  reviewed it and its terms?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  Do you understand that part of your

17  plea agreement is this sealed Attachment A?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Okay.  Do you understand that

20  consistent with the practice in our District, we always have

21  sealed Attachment A as a part of a plea agreement?  Do you

22  understand that?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  I'm going to ask Mr. Weede forecast

25  what the government would summarize for us as the main terms

**A.066**

7

1  of the plea agreement.  After he has done so, I will ask

2  you whether this written agreement accurately reflects the

3  agreement that you have reached with the government.  So

4  please listen to what he has to say.

5        Mr. Weede.

6        MR. WEEDE:  Yes, Your Honor.  If I may.

7        So the first paragraph indicates which is count

8  the defendant will be pleading guilty to.  That is Count 1

9  of the Superseding Indictment which charges him with

10  Production of Child Pornography.

11        Paragraph 2 outlines the statutory maximum and

12  minimum penalties associated with this offense which I know

13  the Court will go over.

14        Paragraph 3 goes over the elements for the

15  offense, which I know again the Court will go over.

16        Paragraph 4 just indicates as the Court has just

17  expressed that there is an Attachment A which is filed in

18  every case.  In this case, Attachment A doesn't have any --

19  well, I won't mention that on the record.

20        Paragraph 6 says at or around the time of

21  sentencing, the government will move to dismiss the original

22  Indictment as well as Counts 2 and 3 of the Superseding

23  Indictment.

24        Paragraph 7 contains a number of guideline

25  stipulations which I will go over based on the November 1st,

**A.067**

1    2018 Edition of the Sentencing Guideline.

2              The parties agree the defendant's Base Offense

3    Level is 32 pursuant to Guideline Section 2G2.1a.

4              The government will not argue that the defendant

5    knowingly engaged in distribution as set forth in Section

6    2G2.1b3.

7              The relevant conduct associated with Count 1

8    involved an additional minor child under the age of 12 and

9    thus a two-level increase to the defendant's offense levels

10   is required pursuant to Sections 2G2.1d1 and 3D1.4.

11             And provided the United States does not learn of

12   conduct by the defendant inconsistent with the acceptance of

13   responsibility, it agrees that a two-level reduction to his

14   offense is required pursuant to Section 3E1.1a.  And, of

15   course, the parties are free to argue except as stated above

16   the applicability of other provisions of the guidelines,

17   including offense conduct, offense characteristics, criminal

18   history adjustment and departures.  In any event, these

19   stipulations are not binding on either the Probation Officer

20   or the Court and the Court may make its own factual and

21   legal determinations that differ from its stipulation that

22   may result in an increase or decrease in the guideline range.

23             The United States retains the right to make

24   whatever sentencing recommendations it believes are

25   appropriate.

**A.068**

1          Paragraph 9 just goes through the sentencing

2     process, which I know the Court will go over, including the

3     3553(a) factors, and that ultimately the sentence is up to

4     the Court, the sentencing Judge.

5          Paragraph 10 is a forfeiture paragraph that

6     pertains to any property that was used to facilitate the

7     offense and some other provisions that are there, including

8     some phones and a Gateway computer.

9          Paragraph 11 is an appellate waiver, which I

10    know the Court will go over in detail.

11         Paragraph 12 is a special assessment of $100.

12         Paragraphs 13 and 14 go over the sex offender

13    registration requirements.

14         And paragraph 16 is a restitution order

15    vis-à-vis Minor A and Minor B.

16         And then paragraph 17 indicates that this is the

17    sum total of the agreement between the parties.

18         THE COURT:  Thank you very much, Mr. Weede.

19         Mr. Crocker, does the written agreement as

20    summarized by the prosecutor accurately reflect the

21    agreement you have reached with the government?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  Has anybody made you any promises

24    that are not contained in the written agreement?

25         THE DEFENDANT:  No, Your Honor.

**A.069**

1          THE COURT:  Has anybody threatened you or forced

2  you to enter into this agreement?

3          THE DEFENDANT:  No, Your Honor.

4          THE COURT:  Do you understand now is the time to

5  tell me of any promises not in the record or of any threats

6  that have been made because you will not be able to withdraw

7  your plea of guilty at a later time based on information you

8  could share with me today?

9          THE DEFENDANT:  No, Your Honor.

10          THE COURT:  The question is do you understand

11  that?

12          THE DEFENDANT:  Yes, I understand.

13          THE COURT:  Okay.  So if I accept your guilty

14  plea today, and you try to withdraw it, you are not going to

15  be permitted to withdraw it if it is based on something you

16  could tell me today.  Do you understand that?

17          THE DEFENDANT:  That I can't exceed over

18  30 years?

19          THE COURT:  So are you suggesting somebody has

20  promised you that your sentence will not exceed 30 years?

21          THE DEFENDANT:  Yes, 30 years.

22          THE COURT:  Who promised that to you?

23          THE DEFENDANT:  Mr. Weede.

24          THE COURT:  Mr. Weede, do you want to address

25  that?

**A.070**

1        MR. WEEDE:  Yes, Your Honor.  The statutory

2   maximum of this offense is 30 years.  I said that there is

3   no way the Court could sentence him over 30 years.

4        THE COURT:  Because that is the max.

5        MR. WEEDE:  That is the absolute maximum that

6   the Court can impose here.

7        THE COURT:  So there is maybe a little

8   confusion.

9        Mr. Crocker, that is not an explicit promise in

10  the agreement, so I can see why that may be confusing, but

11  the law as Mr. Weede has explained to me and to you would

12  not permit me to sentence you to more than 30 years.  So I

13  suppose that is like a promise, but the reality is I don't

14  have the legal authority to sentence you to more than

15  30 years.  So that is true, you can rely on that.

16        Do you understand that?

17        THE DEFENDANT:  Yes.

18        THE COURT:  Okay.  Is there anything else that

19  you think may have been promised to you that is not in this

20  agreement?

21        THE DEFENDANT:  No, Your Honor.

22        THE COURT:  And is there -- has anybody made

23  any threats to you in order to get you to enter into this

24  agreement?

25        THE DEFENDANT:  No, Your Honor.

**A.071**

1          THE COURT:  Do you understand that the offense

2    to which you are pleading guilty is a felony offense, and if

3    your plea is accepted, you may lose some valuable civil

4    rights, including the right to vote, the right to hold

5    public office, the right to serve on a jury, and the right

6    to possess any kind of firearm or ammunition?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Let's talk about the maximum

9    penalties that the statute would allow me to impose.

10          As you have already heard, the statutory maximum

11   penalties for Count 1 to which you are pleading guilty is

12   30 years of imprisonment.  There is a mandatory minimum of

13   15 years which I will talk about in a moment.  I can also

14   impose a fine of up to $250,000.  I can impose a term of

15   supervised release after you finish prison for up to the

16   rest of your life.  And I have to impose at least a

17   mandatory minimum of five years of supervised release after

18   you finish your term in prison.  I can impose a restitution

19   obligation that you pay restitution to victims of any crime

20   you committed.  And there will be a $100 special assessment.

21          Do you understand that all of that is what I am

22   permitted to impose as the punishment in this case?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Do you understand that before

25   sentencing, the United States Probation Office will prepare

**A.072**

1    a presentence investigation report for the Court and both

2    you and the government will have a chance to review that

3    report and to challenge any of the facts contained in the

4    report?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  The plea agreement talks a little

7    bit about the sentencing process here in federal court, but

8    I want to make sure you understand what my view is in regard

9    to sentencing.

10           I have a responsibility under a particular

11    statute, it's Title 18, United States Code, Section 3553(a)

12    to impose a sentence sufficient but not any greater than

13    necessary, to provide just punishment and afford deterrence.

14           I follow a three step process in determining

15    such a sentence:

16           The first thing I consider is the sentencing

17    guideline calculations as prepared by the Probation Office

18    and any objections to those calculations.

19           I then have to rule on any motions for a

20    departure from the guidelines and explain my ruling and how

21    any departure affects the guidelines calculation.

22           And finally, I have to consider all the

23    other factors in that statute, 3553(a) and determine the

24    appropriate sentence to impose which may vary from the

25    sentencing range called for by the guidelines.  Often, the

**A.073**

1    government will recommend a sentence within the guideline

2    range, but without reviewing that presentence investigation

3    report, I cannot predict today whether the guideline range

4    in your case would be reasonable or not.

5              Do you understand all of this?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  As I mentioned but want to

8    remind you, you are facing a mandatory minimum term of

9    incarceration by statute.  Do you understand I have no

10   authority to sentence you to less time than the mandatory

11   minimum term of imprisonment unless the government were to

12   agree that you qualify for a departure under either Section

13   3553(e), for substantial assistance, or under Section

14   3553(f), the safety valve provisions?  Do you understand

15   that?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Do you understand that ordinarily,

18   you and the government would have the right to appeal

19   whatever sentence I impose?

20             THE DEFENDANT:  I do now.  Yes.

21             THE COURT:  Okay.  However, your right to appeal

22   or challenge whatever sentence I impose will be limited by

23   the appellate waiver provision of your plea agreement.  Do

24   you understand that?

25             THE DEFENDANT:  Yes, Your Honor.

**A.074**

1          **THE COURT:  I am referring specifically to**
2   **paragraph 11 of the plea agreement.  I want to read that to**
3   **you now.**
4          **It says as follows:  The defendant knows that he**
5   **has, and voluntarily and expressly waives, the right to file**
6   **any appeal, any collateral attack, or any other writ or**
7   **motion after sentencing, including, but not limited to, an**
8   **appeal under 18 U.S.C., Section 3742, or 28 U.S.C., Section**
9   **1291, or a motion under 28 U.S.C., Section 2255.  Not**
10  **withstanding the foregoing, the defendant reserves the right**
11  **to, (1), file an appeal or other collateral motion on the**
12  **ground that he received ineffective assistance of counsel,**
13  **and, (2) appeals his sentence if (A), the government appeals**
14  **from the sentence, (B), the defendant's sentence exceeds the**
15  **statutory maximum for the offense set forth in the United**
16  **States Code, or (C), the District Court imposes an upward**
17  **variance above the final sentencing guideline range that it**
18  **determines at sentencing.**
19         **So the first question is, do you understand that**
20  **that is part of your plea agreement?**
21         **THE DEFENDANT:  Yes, Your Honor.**
22         **THE COURT:  I want to make sure you also**
23  **understand that is a very broad waiver of right you would**
24  **otherwise have to appeal or challenge whatever sentence I**
25  **impose.  Do you understand that?**

**A.075**

1          THE DEFENDANT:  Yes.

2          THE COURT:  And so if I accept your plea, you

3     will only be able to challenge your sentence in the very

4     narrow circumstances specifically set out in that paragraph.

5     Do you understand that?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  I want to make sure you also

8     understand my best guess is that none of those narrow

9     circumstances will actually happen so you should assume you

10    will have no ability to challenge or attack whatever

11    sentence I impose or appeal it.  Do you understand that?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Most importantly, do you understand

14    if the Court imposes a sentence that is harsher or more

15    severe than the sentence you expect, you will still be bound

16    by your plea and you will have no right to withdraw it on

17    that basis?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Do you understand that your sentence

20    will include a term of incarceration, followed by a term of

21    supervised release, and if you are found to be in violation

22    of any of the conditions of your supervised release, your

23    release may be revoked and you may have to serve an

24    additional term in prison?

25         THE DEFENDANT:  Yes, sir.

1          THE COURT:  Do you understand your sentence may

2    include payment of a fine and/or payment of restitution to

3    victims of any crime you committed and will include a

4    mandatory special assessment for each offense to which you

5    plead guilty?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that your plea

8    agreement contains a forfeiture provision by which you are

9    agreeing to forfeit or surrender whatever interest you may

10   have in the property specified in the agreement?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Do you understand you have the right

13   to plead not guilty to these offenses, to persist in your

14   plea of not guilty, and to then have a trial by jury on the

15   offenses, during which you would also have the right to the

16   assistance of an attorney for your defense, or the right to

17   proceed and represent yourself, the right to see and hear

18   all the witnesses and have them cross-examined in your own

19   defense, the right on your own part not to testify unless

20   you voluntarily elected to do so in your own defense and the

21   right to compel the attendance of witnesses to testify on

22   your behalf?  Do you understand you have all of these

23   rights?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you further understand that by

**A.077**

1    entering a plea of guilty, there will be no trial and you

2    will have waived or given up your right to a trial by jury

3    as well as the other rights associated by trial by jury?

4                    THE DEFENDANT:  Yes.

5                    THE COURT:  I want to make sure you specifically

6    understand since we started your trial today and we have

7    picked a jury and I have given them preliminary instructions

8    and they're planning to come back tomorrow morning, if you

9    plead guilty and I accept your plea, we're going to tell

10   those jurors not to come back and there will never be a

11   trial on these counts.  Do you understand that?

12                   THE DEFENDANT:  Yes.

13                   THE COURT:  Do you understand that if the

14   case were to continue with the trial, it would be the

15   government's burden to prove to the jury, beyond a

16   reasonable doubt, each of the essential elements of the

17   offenses charged and the jury would have to unanimously

18   agree as to your guilt?

19                   THE DEFENDANT:  Yes.

20                   THE COURT:  Let's talk about the essential

21   elements of Count 1 to which you are pleading guilty.  I

22   know you are familiar with them because we have talked about

23   it earlier today and I read them to the jury.

24                   Well, let's just make absolutely sure.

25                   Paragraph 3 of your plea agreement says that the

**A.078**

1    defendant understands that if there were a trial with regard

2    to Count 1, the government would have to prove the following

3    elements beyond a reasonable doubt?

4                    First, the victim Minor A was under 18 years

5    old.

6                    2.  The defendant knowingly used Minor A to take

7    part in sexually explicit conduct.

8                    3.  For the purpose of producing a visual

9    depiction of such conduct.

10                   And 4.  The visual depiction was produced using

11   the materials that had been transported across state lines

12   or in foreign commerce or the visual depiction was

13   transmitted using any means or facility of interstate or

14   foreign commerce.

15                   Do you understand that that is what the

16   government would have to prove to the jury beyond a

17   reasonable doubt for you to found guilty of Count 1?

18                   THE DEFENDANT:  I do now, sir.

19                   THE COURT:  You do understand; correct?

20                   THE DEFENDANT:  Yes.

21                   THE COURT:  Do you understand if I accept your

22   guilty plea, the government will not have to prove anything?

23                   THE DEFENDANT:  Yes.

24                   THE COURT:  Are you pleading guilty of your own

25   free will because you are in fact guilty?

1            THE DEFENDANT:  Yes.

2            THE COURT:  All right.  I need you to tell me in

3    your own words what it is you did that makes you think you

4    are guilty of this offense.

5            THE DEFENDANT:  I, I took part in sexual

6    explicit conduct with a minor.  And, um, and recorded it

7    with a cellphone.

8            THE COURT:  It was with your minor daughter;

9    correct?

10           THE DEFENDANT:  Yes.

11           THE COURT:  I'm going to have the prosecutor

12   summarize for us what he would be prepared to prove if this

13   case went forward to trial tomorrow.

14           Mr. Weede.

15           MR. WEEDE:  Yes, Your Honor.  Minor A is as

16   Mr. Crocker said, REDACTED OF NAME      .  During the period of time

17   covered by the Indictment, she was between 7 and 8 years

18   old.  The evidence in the case demonstrates that the

19   defendant did in fact take videos of  REDACTED OF NAME  engaging in

20   sexually explicit conduct of basically three varieties:  One

21   is oral sex, performing oral sex on Mr. Crocker.  Two is

22   masturbating with Mr. Crocker.  And three would be

23   lascivious exhibition of the genitals of her vagina.

24           These videos were taken of cellphones, one of

25   which was recovered in the investigation.  It was a Samsung

**A.080**

1  S5.   The government would present evidence that that Samsung

2  S5 was manufactured in China.

3            Moreover, three videos were uploaded to Dropbox

4  an account in the defendant's name.  And you have to use the

5  Internet in order to upload that to Dropbox.

6            THE COURT:  Okay.  Thank you.

7            Mr. Crocker, did you hear anything in what Mr.

8  Weede said are the facts here that you disagree with?

9            THE DEFENDANT:  I heard everything, Your Honor.

10           THE COURT:  And?

11           THE DEFENDANT:  I don't disagree.

12           THE COURT:  You have the right for us to read

13  the Indictment in open court.  You can also waive that

14  right.  Do you wish for us to read the indictment in open

15  court at this time?

16           THE DEFENDANT:  No, Your Honor.

17           THE COURT:  Mr. Weede, is there anything else

18  you think I should ask the defendant before I ask him how he

19  pleads?

20           MR. WEEDE:  No, Your Honor.

21           THE COURT:  Mr. Crocker, at this time, with

22  respect to Count 1 of the indictment that we have been

23  discussing, how do you plead, guilty or not guilty?

24           THE DEFENDANT:  Guilty.

25           THE COURT:  It is the finding then of the Court

1    in the case of United States versus Toron O. Crocker that

2    the defendant is fully competent and capable of entering an

3    informed plea, that his plea of guilty is a knowing and

4    voluntary plea supported by an independent basis in fact

5    containing each of the elements, the essential elements of

6    the offense.  Therefore, his plea of guilty is accepted and

7    he is now adjudged guilty of the offense.

8              Mr. Crocker, we're going to bring you the

9    original of the Indictment.  I need you to sign on the back

10   of that.  And I think Mr. Cipparone, if you don't mind, as

11   stand-by counsel, I'll ask that you sign as well.

12             MR. CIPPARONE:  Certainly, Your Honor.

13             (The indictment is signed by stand-by counsel

14   and the defendant and then returned to the deputy clerk.)

15             MR. CIPPARONE:  May I approach, Your Honor?

16             THE COURT:  Yes.  Thank you very much.

17             MR. CIPPARONE:  Thank you.

18             THE COURT:  All right.  I have signed and

19   accepted the plea agreement.  A plea of guilty will be

20   entered on the record with respect to Count 1.

21             In terms of sentencing, we have very tentatively

22   set sentencing for Friday, February 25th at 1:00 p.m.  Does

23   the government know if that poses any problem?

24             MR. WEEDE:  Not to my knowledge, Your Honor.

25             THE COURT:  Okay.  And Mr. Crocker, I'm

1  confident it shouldn't be an issue for you, but do you have

2  any questions about that?

3            THE DEFENDANT:  No, Your Honor.

4            THE COURT:  Okay.  Is there anything else we

5  should discuss in this matter, Mr. Weede?

6            MR. WEEDE:  No, Your Honor.

7            THE COURT:  Mr. Crocker, do you have any

8  questions or anything else to discuss?

9            THE DEFENDANT:  No, Your Honor.

10           THE COURT:  Mr. Cipparone, do you?

11           MR. CIPPARONE:  No, Your Honor.  Thank you.

12           THE COURT:  All right.  So we will contact the

13 jurors tonight and tell them that they are excused.  So the

14 remainder of the trial is canceled, and we'll get our

15 standard order out with respect to sentencing.

16           Thank you all very much.  And we will be in

17 recess.

18           (Change of plea hearing ends at 5:08 p.m.)

19

20      I hereby certify the foregoing is a true and accurate
   transcript from my stenographic notes in the proceeding.

21

22                      /s/ Brian P. Gaffigan
                     Official Court Reporter
23                     U.S. District Court

24

25

**A.083**