NO. 22-1496

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,
Appellee

v.

TORON CROCKER,
Appellant

Appeal from the United States District Court
for the District of Delaware
(Crim. Action No. 1:17-cr-00010-001-LPS)

Brief for Appellee United States of America

**DAVID C. WEISS**
**United States Attorney**

JESSE S. WENGER
Assistant United States Attorney
Chief of Appeals

SHAWN A. WEEDE
Assistant United States Attorney

1313 N. Market Street, Suite 400
Wilmington, DE  19801
(302) 573-6277

# TABLE OF CONTENTS

STATEMENT OF SUBJECT MATTER AND
APPELLATEJURISDICTION...........................................................................1

STATEMENT OF ISSUES ............................................................................ 2

STATEMENT OF THE FACTS AND CASE..................................................... 3

STATEMENT OF RELATED
CASES.............................................................................................................13

SUMMARY OF ARGUMENT........................................................................14

ARGUMENT.................................................................................................. 16

   I.  THIS COURT SHOULD ENFORCE THE APPELLATE WAIVER
      THAT CROCKER ENTERED KNOWINGLY AND
      VOLUNTARILY.....................................................................................16

      Standard of Review.................................................................................16

      Argument..................................................................................................16

  II. THE DISTRICT COURT DID NOT COMMIT PLAIN ERROR IN ITS
      GUILTY PLEA COLLOQUY WITH CROCKER................................... 21

      Standard of Review.................................................................................21

      Argument..................................................................................................21

      A. The District Court's Colloquy Fully Complied with Rule 11...........23

      B. Crocker's Argument Likewise Fails Because He Cannot
          Demonstrate That but for the Alleged Rule 11 Error He Would
          Have Gone to Trial........................................................................ 33

      C. For Similar Reasons, Crocker Fails to Show that Any Error
          Seriously Affected the Fairness, Integrity or Public Reputation of
          Judicial Proceedings...................................................................... 40

III.    THE WITHIN-GUIDELINE SENTENCE IMPOSED BY THE DISTRICT COURT WAS SUBSTANTIVELY REASONABLE.........41

Standard of Review...................................................................41

Argument................................................................................41

CONCLUSION........................................................................46

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Boykin v. Alabama,*
  395 U.S. 238 (1969) ................................................................. 25

*Chaidez v. United States,*
  568 U.S. 342 (2013) ............................................................. 23-24

*Dickerson v. Vaughn,*
  90 F.3d 87 (3d Cir. 1996) ...................................................... 25

*Gozlon-Peretz v. United States,*
  498 U.S. 395 (1991) ............................................................... 29

*Jamison v. Klem,*
  544 F.3d 266 (3d Cir. 2008) ................................................. 25

*Khan v. Att'y Gen.,*
  691 F.3d 488 (3d Cir. 2012) ................................................. 44

*Kincade v. United States,*
  559 F.2d 906 (3d Cir. 1977) ................................................. 24

*Parry v. Rosemeyer,*
  64 F.3d 110 (3d Cir. 1995) ................................................... 25

*Piasecki v. Court of Common Pleas,*
  917 F.3d 161 (3d Cir. 2019) .............................................. 30-32

*Rita v. United States,*
  551 U.S. 338 (2007) ........................................................... 41-42

*United States v. Alvarado-Casas,*
  715 F.3d 945 (5th Cir. 2013) ............................................. 39-40

*United States v. Baylin,*
  696 F.2d 1030 (3d Cir. 1982) ........................................... 29, 30

*United States v. Brown,*
  586 F.3d 1342 (11th Cir. 2009) ............................................ 40

*United States v. Chau,*
  426 F.3d 1318 (11th Cir. 2005) ............................................ 33

*United States v. Cleary,*
  46 F.3d 307 (3d Cir. 1995) ................................................... 28

*United States v. Dixon,*
  308 F.3d 229 (3d Cir. 2002) ............................... 34, 35, 36, 40

*United States v. Dominguez Benitez,*
  542 U.S. 74 (2004) ................................................... 22, 34, 36

*United States v. Essig,*
    10 F.3d 968 (3d Cir. 1993) ............................................. 29

*United States v. Flores-Mejia,*
    759 F.3d 253 (3d Cir. 2014) (en banc) ................................. 44

*United States v. Fraser,*
    42 F. App'x 532 (3d Cir. 2002) ........................................ 30

*United States v. Goodson,*
    544 F.3d 529 (3d Cir. 2008) ..................................... 17, 18, 21

*United States v. Handerhan,*
    739 F.3d 114 (3d Cir. 2014) ................................... 41-42, 44

*United States v. Henry,*
    893 F.2d 46 (3d Cir. 1990) ............................................ 38

*United States v. Irving,*
    554 F.3d 64 (2d Cir. 2009) ............................................ 45

*United States v. Jackson,*
    523 F.3d 234 (3d Cir 2008) ........................................... 20

*United States v. Jackson,*
    849 F.3d 540 (3d Cir. 2017) ....................................... 21, 22

*United States v. Khattak,*
    273 F.3d 557 (3d Cir. 2001) ................................. 16, 17, 18, 19

*United States v. Knobloch,*
    131 F.3d 366 (3d Cir. 1997) ........................................... 34

*United States v. Larkin,*
    629 F.3d 177 (3d Cir. 2010) ........................................... 45

*United States v. Lessner,*
    498 F.3d 185 (3d Cir. 2007) ........................................... 23

*United States v. Levinson,*
    543 F.3d 190 (3d Cir. 2008) ........................................... 41

*United States v. Powell,*
    269 F.3d 175 (3d Cir. 2001) ....................................... 32-33

*United States v. Price,*
    13 F.3d 711 (3d Cir. 1994) ............................................ 33

*United States v. Salmon,*
    944 F.2d 1106 (3d Cir. 1991) .......................................... 25

*United States v. Seibert,*
    971 F.3d 396 (3d Cir. 2020)........................................ 44, 45

*United States v. Simpkins,*
    67 F. App'x 704 (3d Cir. 2003) ....................................... 37

*United States v. Stull,*
    760 F. App'x 109 (3d Cir. 2019) ............................ 45

*United States v. Teeter,*
    257 F.3d 14 (1st Cir. 2001) ................................. 19

*United States v. Thornton,*
    327 F.3d 268 (3d Cir. 2003) ................................ 18

*United States v. Todd,*
    521 F.3d 891 (8th Cir. 2008) ............................... 28

*United States v. Tomko,*
    562 F.3d 558 (3d Cir. 2009) (en banc) ............... 41, 43

*United States v. Vaval,*
    404 F.3d 144 (2d Cir. 2005) ................................ 39

*United States v. Vonn,*
    535 U.S. 55 (2002) .......................................... 27

*United States v. Williams,*
    510 F.3d 416 (3d Cir. 2007) ............................. 18-19

*United States v. Wilson,*
    429 F.3d 455 (3d Cir. 2005) ................................ 19

*United States v. Yung,*
    37 F.4th 70 (3d Cir. 2022) .................................. 23

## STATUTES

18 U.S.C. § 2251 ........................................... 5, 6, 18

18 U.S.C. § 2252A .............................................. 5, 6

18 U.S.C. § 3231 ................................................... 1

18 U.S.C. § 3553 ....................................... 11, 26, 44

18 U.S.C. § 3583 ................................................. 26

18 U.S.C. § 3624 ................................................. 26

18 U.S.C. § 3742 ............................................... 1, 6

28 U.S.C. § 1291 ............................................... 1, 6

28 U.S.C. § 2254 ............................................. 30-31

28 U.S.C. § 2255 ................................................... 6

## RULES

Federal Rule of Criminal Procedure 11 ............................... *passim*

**STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION**

The United States Court of Appeals for the Third Circuit has appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231.

# STATEMENT OF ISSUES

I.  Whether this Court should enforce the appellate waiver in Appellant Toron Crocker's plea agreement.

II.  Whether the District Court plainly erred by not advising Crocker during the plea colloquy that he would be subject to mandatory sex offender registration as a condition of supervised release, when neither Rule 11 nor any case from this Court require such instruction, he was put on notice of this requirement in his plea agreement and by the prosecutor, and there is no basis to believe that he would have otherwise rejected the favorable plea he was offered.

III.  Whether the District Court abused its discretion by imposing a sentence within the Sentencing Guidelines.

## STATEMENT OF THE FACTS AND CASE

Crocker sexually molested his two preteen daughters for years.  PSR ¶¶ 15-40.  He repeatedly filmed this activity using his cell phones and uploaded a number of these videos to an Internet cloud account.  *Id.*

Law enforcement became aware of Crocker's activity in early 2017. *Id.* ¶¶ 12-14.  In an unrelated investigation, the FBI came across two child pornography videos.  *Id.* ¶ 12.  In the first, a prepubescent girl performs oral sex on an adult male.  *Id.* ¶ 13.  In the other, the same girl masturbates with the same man by rubbing their naked genitalia together.  *Id.* ¶¶ 13, 34.  Both videos show the man's face.  *Id.*  And in one, there is also a clear view of the man's distinctive chest tattoo.  *Id.*  Based on this information, the FBI was able to identify Crocker as the man in these videos.  *Id.* ¶¶ 13-14.  The girl is his youngest daughter, who was  seven years old at the time.  *Id.* ¶ 34.

The FBI obtained federal search warrants for Crocker's person and residence in February 2017.  *Id.* ¶ 14.  After Crocker arrived for a state probation appointment, the agents detained him, confirmed his identity, and took photographs of his person.  *Id.*  Crocker then waived his *Miranda* rights and consented to an interview, ultimately admitting that he made child pornography videos of his two daughters for years, and that he uploaded a

number of them to his Dropbox cloud account.[1]  *Id.* ¶¶ 15-18.  The girls were 8 and 10 at the time of the interview, and as young as 7 during the offense conduct.  *Id.* ¶¶ 15, 34.

Pursuant to federal search warrants, the FBI forensically examined Crocker's electronic devices – including a phone taken from his person, another phone found in his vehicle, and a computer at his residence.  *Id.* ¶¶ 22-24.  Agents likewise obtained a warrant for Crocker's Dropbox account.  *Id.* ¶ 19.

Through these searches, the FBI found a series of child pornography videos involving Crocker's preteen daughters from 2015 through 2017.  *Id.* ¶¶ 25-34.  Crocker himself appears in a number of these videos – either personally engaging in sexual conduct with his children or directing them to pose in revealing positions to obtain close-ups of their nude genitalia.  *Id.*

Additional evidence of Crocker's sexual interest in children was found on his home computer, including child pornography images and videos of children who were not related to Crocker; Internet artifacts consistent with using Dropbox to obtain child pornography; and Google searches and URLs consistent with searching for child pornography.  *Id.* ¶¶ 24-25.

---

[1] Dropbox is a cloud-based Internet data storage and sharing service for electronic files.  *See https://www.dropbox.com/features/cloud-storage* (last visited Aug. 1, 2022).

Crocker was arrested on the day of his interview pursuant to a criminal complaint. *Id.* ¶ 1. On September 10, 2020, a Superseding Indictment was returned against Crocker, charging him with three offenses related to his abuse of his two daughters: Production of Child Pornography Regarding Minor A, in violation of 18 U.S.C. § 2251(a) & (e) (Count One); Production of Child Pornography Regarding Minor B, in violation of 18 U.S.C. § 2251(a) & (e) (Count Two); and Possession of Child Pornography Involving a Prepubescent Minor Under 12, in violation of 18 U.S.C. § 2252A(a)(5)(B) & 2252A(b)(2) (Count Three). A92-95.

Trial commenced on October 12, 2021. A90 (DDE 107). Just before jury selection, Crocker requested to proceed *pro se*. A78. After conducting a colloquy, the District Court granted Crocker's request and appointed his defense counsel to act in a standby capacity. A82.

After a jury had been empaneled but prior to opening statements, Crocker, his standby counsel, and the government engaged in plea discussions. A62; A78. Crocker agreed to plead guilty to Count One, provided the government dismissed Counts Two and Three. A96-97 (plea agreement). If convicted of all counts at trial, Crocker faced a statutory

maximum penalty of 80 years of imprisonment.[2]   By allowing Crocker to

plead to a single count, the plea agreement capped his prison exposure at 30

years.  A96.

As part of the plea, with limited exceptions, Crocker waived his right to

file an appeal or present any collateral challenge to his conviction or

sentence.  Specifically, the appellate waiver in the plea agreement provides:

> The defendant knows that he has, and voluntarily and expressly
> waives, the right to file any appeal, any collateral attack, or any
> other writ or motion after sentencing – including, but not limited
> to, an appeal under 18 U.S.C. § 3742 or 28 U.S.C. § 1291, or a
> motion under 28 U.S.C. § 2255.  Notwithstanding the foregoing,
> the defendant reserves the right to (1) file an appeal or other
> collateral motion on the grounds that he received ineffective
> assistance of counsel, and (2) appeal his sentence if:  (a) the
> government appeals from the sentence; (b) the defendant's
> sentence exceeds the statutory maximum for the offense set forth
> in the United States Code; or (c) the District Court imposes an
> "upward variance" above the final Sentencing Guideline range
> that it determines at sentencing.

A100-101.

The plea agreement also included two paragraphs describing sex

offender registration requirements.  A101-102.  This included notice that

---

[2] Each count of Production of Child Pornography is punishable by up to 30
years of imprisonment.  *See* 18 U.S.C. § 2251(e).  Since this case involved
images of minors who had not attained 12 years of age, the third count of
Possession of Child Pornography is punishable by up to 20 years of
imprisonment.  *See* 18 U.S.C. § 2252A(b)(2).

Crocker would "be required to register as a sex offender upon his release from prison as a condition of supervised release." A101.

The District Court performed a Rule 11 colloquy prior to accepting the plea. It first placed Crocker under oath and asked if he reviewed and signed the plea agreement. A64-66. Crocker stated that he had done so. A66 The District Court then asked the government to summarize the "main terms" of the agreement. A66-67. During this recitation, the government expressly referenced both the appellate waiver and "the sex offender registration requirements" articulated therein. A69.

Next, the District Court informed Crocker of the maximum penalties that could be imposed upon him by pleading guilty. In so doing, it described the mandatory minimum and maximum prison sentences, the mandatory minimum and maximum supervised release terms, and the maximum fine – all of which Crocker said he understood. A72, A74. Moreover, the District Court informed Crocker that if he was "found to be in violation" of any of his supervised release conditions, he could be sentenced to additional time in prison. A76. Crocker likewise indicated that he understood. *Id.*

The District Court discussed the appellate waiver in detail, and read its specific language to Crocker in open court. A75. The District Court described its scope as "very broad," and advised that its "very narrow" exceptions were

unlikely to come into play.  A75-76.  Crocker said that he understood.  A76.
After addressing the other relevant provisions of Rule 11, the District Court
found that Crocker was "fully competent," and accepted his guilty plea as
knowing and voluntary.  A81-82.

The Probation Office prepared a Presentence Investigation Report in
advance of sentencing.  Based on the nature and characteristics of Crocker's
conduct, he received a number of offense-level enhancements under the
Sentencing Guidelines – including an enhancement for being a "repeat and
dangerous sex offender against minors."  PSR ¶ 76.  In all, his total offense
level was calculated to be 45 – a score above the maximum provided by the
Guidelines' Sentencing Table.  *Id.* ¶¶ 76-77.  As a result, the Sentencing
Guidelines range was initially calculated to be "life."  *Id.* ¶ 132.  However, 30
years was the longest sentence Crocker could receive pursuant to the plea
agreement and the statute.  *Id.*  Therefore, Crocker's final Guidelines
dropped to 30 years, which became both the top and bottom of the advisory
"range."  *Id.*

The PSR notified Crocker that he would be required to register as a sex
offender upon his release from prison.  *Id.* ¶ 10.  Moreover, in addition to the
standard supervised release requirements, the PSR outlined a number of
other conditions that would take effect upon Crocker's release from

incarceration, including: mental health and sex offender treatment; DNA collection; random polygraph examinations; a prohibition on owning a personal computer or electronic devices for at least a year; and no unsupervised contact with minors without court approval. *Id.* ¶¶ 134-138.

A sentencing hearing was held on March 8, 2022. A9. That morning, Crocker requested a continuance, stating that he "had time to read the PSR," but needed an additional 30 days to formulate his objections. A12-13, A16. The District Court denied this request, in part because it previously granted Crocker a continuance and he had "adequate time to prepare." A20. Crocker also requested that his stand-by counsel be reappointed to act as his attorney. A16-17. The District Court granted this request. A19. Defense counsel had represented him for years leading up to trial, had been acting in a standby capacity since Crocker elected to proceed *pro se*, was "very experienced," and had reviewed the PSR. A18-19, A35. The District Court then continued the sentencing hearing until the afternoon to allow Crocker to confer with his attorney. A19. Crocker's attorney indicated that this amount of time was "adequate." A22-23.

When the hearing resumed, Crocker reiterated that he had read the PSR. A23. He made no objections to the PSR's Guideline calculations. A24. Likewise, he lodged no material objections to the facts contained in the PSR,

but submitted two "clarifications" related to the age of his daughters when his offense conduct began.  A24-25.

The District Court adopted the Guideline calculations in the PSR and heard argument from the parties as to the appropriate sentence.  A27. Crocker requested that the court impose a 15-year sentence – the minimum required by law and half of the advisory term of imprisonment.  A28.  In his presentation, Crocker's counsel acknowledged that the circumstances of the offense were "horrific" and caused "devastating effects," but presented a number of arguments in support of a downward variance.  A32-33.  One such argument was that Crocker would have "much less freedom than many" upon his eventual release from prison due to the sex offender reporting requirements.  A34-35.

During his allocution, Crocker apologized for his conduct, and stated that the only reason he "didn't jump straight towards a guilty plea" was because he (mistakenly) believed that he would have to admit that he knowingly distributed the child pornography he created.  A37, PSR ¶ 18 (Crocker's statement to the FBI that "despite receiving child pornography from a person online," he "never intended anyone else to view" the videos he made with his daughters).  Despite the PSR's multiple references to the sex offender reporting requirements, as well as his counsel's argument on the

topic just minutes before, Crocker never mentioned that these restrictions were important to him.  And neither he nor his re-appointed counsel ever moved to withdraw Crocker's guilty plea on that basis or any other.

After hearing from the victims' grandfather, as well as argument from the government, the District Court sentenced Crocker to 30 years of imprisonment.  In doing so, it expressly stated that it considered Crocker's personal history and characteristics, the need to avoid unwarranted sentencing disparities, and the other relevant factors under 18 U.S.C. § 3553(a).  A54-57.  But the severity of Crocker's conduct, the need to punish him for his crimes, and the District Court's obligation to protect the public all weighed heavily in favor of a 30-year sentence.  A48-53.

The District Court also sentenced Crocker to serve 10 years of supervised release following his prison term.  A4; A57.  As conditions of his release, the District Court imposed the "sex offender specific conditions" outlined in the PSR, "standard conditions" adopted by courts in the District of Delaware, as well as other mandatory conditions.  A56-57; A4-6.  The judgment includes two conditions related to sex offender registration: mandatory condition 6 (requiring compliance with the Sex Offender Registration and Notification Act as required by any applicable state sex offender registration agency) and special condition 1 (same).  A4, A6.

Crocker filed a timely notice of appeal on March 17, 2022.  A1.

## STATEMENT OF RELATED CASES

The government is not aware of any other related case or proceeding that is completed, pending, or about to be presented before this Court or any other court or agency, state or federal.

## SUMMARY OF ARGUMENT

"Instead of being a father to his children," Crocker was a "predator to them." A56. For years, he sexually molested his two preteen daughters and filmed this activity. The FBI caught him because he starred in the videos himself, and uploaded them to an Internet cloud account. After his arrest, Crocker confessed in an audiotaped post-*Miranda* statement. Facing a mountain of evidence and 80 years in prison, he accepted a plea agreement on the first day of trial that considerably reduced his sentencing exposure.

He now raises two issues on appeal, despite the fact that he waived the right to do so in his plea agreement. The record, however, establishes that Crocker entered the appellate waiver knowingly and voluntarily and that his appeal falls within the scope of the waiver. This Court should therefore enforce that waiver and affirm the District Court's judgment without reaching the merits of this appeal. Nevertheless, as set forth below, his claims are meritless.

Crocker first argues that his plea should be set aside on plain error review because Rule 11 required the District Court to inform him that he would have to register as a sex offender as a condition of supervised release. But neither Rule 11 nor this Court's precedent require a district court to advise a defendant of supervised release conditions during a plea colloquy.

And even if Crocker could show otherwise, he cannot establish that but for this error he would have rejected the favorable guilty plea agreement he was offered and gone to trial – as he must, to prevail on plain error review.

Crocker also challenges his 30-year sentence as substantively unreasonable. This sentence is within the applicable Sentencing Guidelines range, and is therefore entitled to a presumption of reasonableness on appeal. To succeed, Crocker must demonstrate that no reasonable sentencing court would have imposed the same sentence for the reasons that the District Court provided. This he cannot do.

# ARGUMENT

## I.    THIS COURT SHOULD ENFORCE THE APPELLATE WAIVER THAT CROCKER ENTERED KNOWINGLY AND VOLUNTARILY

### Standard of Review

This Court reviews the validity of an appellate waiver *de novo*.  *United States v. Khattak*, 273 F.3d 557, 560 (3d Cir. 2001).

### Argument

Crocker knowingly and voluntarily waived the right to file a direct appeal of his conviction and sentence with only limited exceptions not relevant here.  The meritless issues he presses on appeal fall within the scope of his appellate waiver and he has not demonstrated that enforcing the waiver would amount to a miscarriage of justice.  Therefore, this Court should enforce the appellate waiver and affirm the District Court's judgment without reaching the merits of this appeal.

This Court has explained that there are three elements to be considered when the government invokes an appellate waiver to bar an appeal:  "(1) whether the waiver of the right to appeal [the defendant's] sentence was knowing and voluntary; (2) whether one of the specific exceptions set forth in the agreement prevents the enforcement of the waiver; i.e., what is the scope of the waiver and does it bar appellate review of the issue pressed by

the defendant; and (3) whether enforcing the waiver would work a miscarriage of justice." *United States v. Goodson*, 544 F.3d 529, 536 (3d Cir. 2008) (cleaned up). The defendant bears the burden to establish why this Court should not enforce the appellate waiver. *Khattak*, 273 F.3d at 563. Crocker cannot meet this burden.

Crocker does not challenge that his appellate waiver was knowing and voluntary. Br. 7 n.5. And rightly so. The record demonstrates that the District Court went over the express provisions of the appellate waiver in detail, and ensured that Crocker understood its terms. Specifically, the District Court read the entirety of the waiver to Crocker in open court, characterizing it as a "very broad waiver" of his appellate rights. A75. The District Court emphasized that Crocker would only be able to challenge his sentence in the "very narrow circumstances" specified in the appellate waiver, and that in its opinion, "none of those narrow circumstances will actually happen." A76. Crocker repeatedly indicated that he understood the waiver's scope and implications. *Id.*

Nor does Crocker argue that one of the exceptions to the appellate waiver applies. Br. 7 n.5. None do. The plea agreement permits Crocker to appeal his sentence only if that sentence exceeded the statutory maximum on any count, if the court imposed an upward departure in the Guideline

calculation, or if the court imposed an upward variance from the Guideline range.[3] A100-01 (appellate waiver). The District Court imposed a sentence of 30 years, which was the statutory maximum for the offense. A56 (sentence); 18 U.S.C. § 2251(e) (statutory maximum of 30 years of imprisonment for Production of Child Pornography). And the sentence imposed did not include an upward departure or variance from the applicable Guideline range. A27. Accordingly, none of the exceptions to the appellate waiver apply.

In light of the above, the appellate waiver must be enforced in the absence of a miscarriage of justice. *Goodson*, 544 F.3d at 536. Generally speaking, enforcing the waiver is in line with justice, not a miscarriage of it. "Allowing defendants to retract waivers would prolong litigation, affording defendants the benefits of their agreements while shielding them from their self-imposed burdens." *Khattak*, 273 F.3d at 561. Moreover, enforcing the waiver also properly prevents Crocker from reaping the "benefits" of his plea agreement "without the burdens." *United States v.*

---

[3] Crocker's plea agreement allows for an appeal or other collateral motion on the grounds he received ineffective assistance of counsel. It is settled law, however, that such claims are not cognizable on direct appeal absent circumstances not present here. *United States v. Thornton*, 327 F.3d 268, 271-72 (3d Cir. 2003). That exception to the appellate waiver, accordingly, does not foreclose enforcement of the waiver as to this direct appeal.

*Williams*, 510 F.3d 416, 422 (3d Cir. 2007) (cleaned up).  Furthermore, enforcing waivers of appeal "preserve[s] the finality of judgments and sentences imposed pursuant to valid pleas of guilty," protects judicial and prosecutorial resources, and ultimately "may assist defendants in making favorable plea bargains." *Khattak*, 273 F.3d at 561-62 (cleaned up).  It is only in the "unusual circumstance" where this Court finds "an error amounting to a miscarriage of justice."  Id. at 562.  Put another way, it is an exception to appellate waiver enforcement that is "applied sparingly and without undue generosity." *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005) (quoting *United States v. Teeter*, 257 F.3d 14, 26 (1st Cir. 2001)).

Crocker generally alleges that "the issues raised" in his brief are "of such magnitude that the waiver of appeal should not be enforced because it would cause a miscarriage of justice."  Br. 7 n.5.  A peek at these issues demonstrates the contrary.  The first is a Rule 11 argument that Crocker failed to raise below, so he must show plain error.  But his claim is not supported by the text of the rule, the Advisory Committee Notes, or this Court's precedent.  And even if it were, he cannot demonstrate that his substantial rights were affected – that is, but for the alleged error, he would have rejected the favorable plea he was offered.  Crocker's second argument is that his within-Guideline sentence is substantively unreasonable, which in

light of the considerable deference afforded to sentencing courts on appeal, is precisely the type of garden-variety claim that should be barred by an appellate waiver. *United States v. Jackson*, 523 F.3d 234, 244 (3d Cir 2008) ("[I]t will be a rare and unusual situation when claims of an unreasonable sentence, standing alone, will be sufficient to invalidate a waiver because of a miscarriage of justice.").

This Court should enforce the appellate waiver and affirm the District Court's judgment.

## II.    THE DISTRICT COURT DID NOT COMMIT PLAIN ERROR IN ITS GUILTY PLEA COLLOQUY WITH CROCKER

### Standard of Review

Because Crocker did not raise his Rule 11 objection below, this Court reviews for plain error.  *United States v. Goodson*, 544 F.3d 529, 539 (3d Cir. 2008).  To prevail on plain error review, an appellant must establish that: (1) an error was committed; (2) the error was "plain" and "clear" under "current law"; and (3) that the error affected his "substantial rights" by affecting the "outcome of the district court proceedings."  *United States v. Jackson*, 849 F.3d 540, 544-45 (3d Cir. 2017) (cleaned up).  Even if the above elements are satisfied, the Court should decline to grant relief unless the error "seriously affects the fairness, integrity or public reputation of judicial proceedings."  *Id.*

### Argument

Crocker claims that Federal Rule of Criminal Procedure 11(b)(1)(H) required the District Court, when taking his guilty plea, to inform him that he would have to register as a sex offender as a condition of his supervised release.  Br. 15-29.  This challenge fails at each step of the plain error analysis.

As a threshold matter, Crocker cannot establish any error, let alone plain error.  Crocker cites no authority, and the government has found none, requiring a district court to advise a defendant of sex offender registration

requirements, or other specific supervised release conditions, as part of its Rule 11 colloquy. Although Crocker roots his argument in the text of Rule 11, he finds no support there. And neither precedent from this Court, nor the Advisory Committee Notes to Rule 11, indicate that supervised release conditions are the type of consequence that must be explained to a defendant to ensure that his plea is knowing and voluntary.

Even if Crocker could meet his burden on the first two prongs of the plain error standard, he must also establish that his substantial rights were affected. To do so, he must show that "but for" the alleged Rule 11 error, there is a "reasonable probability" that "he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). Crocker fails to acknowledge this burden, let alone satisfy it. And any such attempt would be futile. Crocker had strong incentives to plead guilty: the evidence against him was overwhelming, and his plea agreement materially capped his sentencing exposure. Moreover, the record below establishes that he was well aware that he would have to register as a sex offender pursuant to his guilty plea, but that this requirement was unimportant to him.

Finally, Crocker's Rule 11 claim presents nothing that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Jackson*, 849 F.3d at 544-45. Accordingly, even if Crocker could satisfy the first three

prongs of the plain error standard, this Court should decline to grant him relief.

## A. The District Court's Colloquy Fully Complied with Rule 11

For "a defendant's guilty plea to be knowing and intelligent," he must understand the "direct penal consequences" of that plea. *United States v. Yung*, 37 F.4th 70, 81 (3d Cir. 2022). Rule 11 is designed to provide guidance to district courts in this regard, by providing a list of "factors relevant to this voluntariness determination." *United States v. Lessner*, 498 F.3d 185, 193 (3d Cir. 2007) (cleaned up). Relevant here, Rule 11(b)(1)(H) requires a district court to inform the defendant of "any maximum possible penalty, including imprisonment, fine, and term of supervised release" during its plea colloquy. Fed. R. Crim. P. 11(b)(1)(H). The District Court complied with that demand.

Crocker claims that this provision of Rule 11 required the District Court to inform him that, if he pleaded guilty to Count One, he would be subject to the requirements of the Sex Offender Registration and Notification Act ("SORNA"). Br. 15-29. Sex offender registration requirements are "commonly viewed" as "collateral consequences" to a conviction, which need not be addressed at a guilty plea hearing. *See, e.g., Chaidez v. United States*, 568 U.S. 342, 349 n.5 (2013) ("[E]ffects of a conviction commonly viewed as

collateral include civil commitment, civil forfeiture, *sex offender registration*, disqualification from public benefits, and disfranchisement.") (emphasis added). But Crocker argues that his circumstances are different because he was obligated to comply with SORNA as a condition of supervised release.[4]   Br. 15-16.   Thus, he claims, the sex offender registration requirements here are a "direct (not a collateral) consequence" of his guilty plea that the District Court should have warned him about pursuant to Rule 11(b)(1)(H).  *Id.* at 16.

But Crocker does not cite a single case that stretches Rule 11 to this extent.  The government has likewise found none from this Court or any other Court of Appeals, published or unpublished.  The available authority is to the contrary.

A district court need not explain "every conceivable 'consequence' of a guilty plea to a defendant."  *Kincade v. United States*, 559 F.2d 906, 908 (3d Cir. 1977).   In the context of advising a defendant about the potential

---

[4] The specific language is found at mandatory condition 6 and special condition 1.  A4 ("You must comply with the requirements of [SORNA] as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense."); A6 ("Defendant shall comply with the requirements of [SORNA] as required by any state sex offender registration agency in which he resides, works or is a student, or was convicted of a qualifying offense.").

penalties he faces, the "direct consequences" that a district court must explain are the outer limits of those penalties – namely, the minimum and maximum amounts that may be imposed.  *See Jamison v. Klem*, 544 F.3d 266, 276-78 (3d Cir. 2008) (holding that trial court must advise a defendant regarding the "permissible range of sentences" including the minimum and maximum prison sentence) (citing and quoting *Boykin v. Alabama*, 395 U.S. 238, 244 n.7 (1969)); *Parry v. Rosemeyer*, 64 F.3d 110, 114 (3d Cir. 1995) ("A direct consequence is one that has a 'definite, immediate, and largely automatic' effect on the *range of the defendant's punishment*.") (emphasis added and citation omitted), *superseded on other grounds by statute as stated in Dickerson v. Vaughn*, 90 F.3d 87, 90 (3d Cir. 1996); *United States v. Salmon*, 944 F.2d 1106, 1130 (3d Cir. 1991) ("The only consequences considered direct are the maximum prison term and fine for the offense charged."), *abrogated on other grounds by United States v. Caraballo-Rodriguez*, 726 F.3d 418, 431-32 (3d Cir. 2013) (en banc).

In harmony with these principles, Rule 11(b)(1)(H) likewise focuses on the outer limits of punishment.  This is clear from its plain text.  In the context of supervised release, the rule only requires a district court to inform a defendant of the potential maximum "term" that may be imposed:

**(b)   Considering and Accepting a Guilty or Nolo Contendere Plea.**

**(1)   Advising and Questioning the Defendant.**
Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:
. . . .
**(H)** any maximum possible penalty, including imprisonment, fine, and term of supervised release;

Fed. R. Crim. P. 11(b)(1)(H).  The rule says nothing of particular *conditions* of supervised release, despite the fact that they exist in every case where supervised release is part of a defendant's sentence.[5]   Rather, Rule 11(b)(1)(H) only requires that a district court advise a defendant of the "maximum" supervised release "term" – i.e., the longest amount of time he could be required to serve under court supervision.  *Id.*

---

[5] All federal defendants sentenced to supervised release are subject to certain mandatory supervised release conditions that are set forth at 18 U.S.C. § 3583(d), such as submitting to drug testing, cooperating in the collection of DNA, and sex offender registration where applicable.  18 U.S.C. § 3583(d). A district court has discretion to impose a wide variety of other conditions, provided that they are moored to the relevant factors at 18 U.S.C. § 3553(a) and the Sentencing Commission's policy statements.  *Id.*  All of these conditions take effect once a defendant is released from his prison sentence. 18 U.S.C. § 3624(e).

This was by design. The 1966 iteration of Rule 11 required a district court to inform the defendant of the "consequences of the plea." Fed. R. Crim. P. 11, Advisory Committee's Note to 1966 Amendments. At this point in time, "Rule 11 was relatively primitive" and did not provide much detail in terms of the specific topics a district court was required to cover. *United States v. Vonn*, 535 U.S. 55, 66 (2002). In 1974, the Advisory Committee replaced this general language with a specific focus on the "shortest" and "longest" amounts of punishment that could be imposed:

> Former rule 11 required the court to inform the defendant of the "consequences of the plea." Subdivision (c)(2) changes this and requires instead that the court inform the defendant of and determine that he understands "the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law for the offense to which the plea is offered." The objective is to insure that a defendant knows what minimum sentence the judge **must** impose and what maximum sentence the judge **may** impose. This information is usually readily ascertainable from the face of the statute defining the crime, and thus it is feasible for the judge to know specifically what to tell the defendant. *Giving this advice tells a defendant the shortest mandatory sentence and also the longest possible sentence for the offense to which he is pleading guilty.*

Fed. R. Crim. P. 11, Advisory Committee's Note to 1974 Amendments (bold in original, italics added).[6] As is evident from the plain text of Rule 11(b)(1)(H), it maintains the same focus today.

---

[6] By contrast, the Advisory Committee expressly rejected imposing a duty to discuss "additional consequences which might follow" from a guilty plea,

Here, the District Court advised Crocker of exactly what Rule 11 demands.  It explained the scope of punishment that Crocker faced by pleading guilty, including the applicable mandatory minimum and maximum prison sentences, the mandatory minimum and maximum supervised release terms, and the maximum fine.  Crocker said, under oath, that he understood all of this.  A72, A74.

Crocker nevertheless argues on appeal that Rule 11 requires a district court to ensure that a defendant understands "**the effect of** any special parole or supervised release term," and that a condition requiring him to register as a sex offender is such an "effect."  Br. 25 (bold in original).  For this argument, he relies on *United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995).  But Crocker fails to mention that *Cleary* was quoting a now-defunct version of Rule 11.  *Cleary*, 46 F.3d at 310 n.2.  The specific language he relies upon was eliminated in a 2002 amendment, "which deleted the reference to 'the effect' of any term of supervised release."  *United States v. Todd*, 521 F.3d 891, 895 n.2 (8th Cir. 2008).

To the extent that Rule 11 required a district judge to explain the "the effect of any special parole or supervised release term," such advice had

---

such as a defendant's ineligibility for parole or the effect of prior convictions. *Id.*

nothing to do with specific release conditions.[7]  The point of that language was to instruct district courts to put defendants on notice that if they violated supervised release – or its predecessor, special parole – they could receive additional prison time on top of any term of incarceration originally imposed, thereby expanding the "maximum possible sentence for the offense."  *United States v. Baylin*, 696 F.2d 1030, 1037, 1037 n.18 (3d Cir. 1982), *superseded by statute on other grounds as stated in United States v. Essig*, 10 F.3d 968, 969-970 (3d Cir. 1993).  The Court did that here.  A76.

Nothing in the text or history of Rule 11 requires district courts to explain traditional concepts associated with court-imposed supervision and monitoring.  Fed. R. Crim. P. 11, Advisory Committee's Note to 1982 Amendments (stating that the requirement to discuss "the effect of any special parole term" was not intended to require a description of "all of [its] characteristics" and indicating that "many aspects of traditional parole need not be communicated").  Such matters are typically beyond the scope of a

---

[7] Like supervised release, "special parole was a period of supervision served upon completion of a prison term."  *Gozlon-Peretz v. United States*, 498 U.S. 395, 399-401 (1991) (cleaned up).  But instead of being supervised by the sentencing court, special parole was administered by the United States Parole Commission.  *Id.*  Rule 11 treats supervised release and special parole as functionally the same.  Fed. R. Crim. P. 11, Advisory Committee's Note to 1989 Amendments (adding "supervised release" to language concerning "special parole" and treating the two as synonymous).

Rule 11 inquiry. *Id.*; *see also Baylin*, 696 F.2d at 1037 (observing in the context of Rule 11 that "under ordinary circumstances, it should not become necessary for a trial court to include an explanation of probation or parole in its inquiry into the defendant's understanding of his plea") (citation and quotation omitted); *United States v. Fraser*, 42 F. App'x 532, 534 (3d Cir. 2002) (not precedential) (rejecting claim that district court was required to advise defendant at plea hearing regarding "conditions of supervised release" restricting his access to computers and the Internet in part because "it has never been held that Rule 11 required every conceivable consequence of a guilty plea to be explained to the defendant").

Without addressing any of the above, Crocker quotes several passages from this Court's opinion in *Piasecki v. Court of Common Pleas*, 917 F.3d 161 (3d Cir. 2019), to argue that sex offender registration requirements must be explained to a defendant as part of a Rule 11 colloquy. Br. 16-19. *Piasecki* demands nothing of the sort and Crocker's reliance on that case is misplaced.

The issue in *Piasecki* was whether a federal court had jurisdiction to entertain a petition for a writ of habeas corpus, where the petitioner had completed his state probationary sentence but was still subject to Pennsylvania's sex offender registration requirements. *Piasecki*, 917 F.3d at 163, 166. Such jurisdiction is conferred by 28 U.S.C. § 2254, which requires

a petitioner to be "in custody pursuant to the judgment of a State court" when the petition is filed. *Id.* at 165-66 (quoting the statute). Addressing the "custody" and "pursuant to the judgment of a State court" elements separately, the Court first reasoned that Pennsylvania's sex offender registration scheme was at least as restrictive as other circumstances that had been equated to "custody" in the habeas context, such as parole, pretrial release, community service, and alcohol rehabilitation classes. *Id.* at 166-70. Second, because the petitioner's criminal judgment required him to register as a sex offender for 10 years, the Court concluded that such registration was a "direct result" of "the judgment of a State court." *Id* at 173.

Thus, *Piasecki* does not concern guilty pleas at all, much less require a district court to address SORNA requirements as part of a Rule 11 colloquy. Although the Court in *Piasecki* concluded that the petitioner's sex offender requirements were a "direct consequence" of his conviction, that holding is limited to the jurisdictional question at issue there. To be a "direct consequence" in that context, all that is required is that the penalty be "imposed pursuant to the judgment of a state court." *Id.* at 166, 173-76. That is not the standard here. As set forth above, in the context of advising a defendant about the potential penalties he faces during a plea colloquy, the "direct consequences" that a district court must explain are the minimum

and maximum amounts of punishment that may be imposed – not every supervised release condition set forth in the judgment of conviction.[8]

Finally, in an effort to demonstrate that his own sex offender registration requirements will be onerous, Crocker lists several that he expects will apply to him in Delaware upon his release, including in-person reporting when he changes his name, residence, employment or school; in-person verification appointments every six months; and notification if he wishes to travel outside of the United States. Br. 19-21. These obligations certainly "restrict his freedom," but so do any conditions of supervised release.[9]    *United States v. Powell*, 269 F.3d 175, 181 (3d Cir. 2001)

---

[8] Indeed, Crocker's judgment includes 34 conditions of supervised release (5 mandatory conditions, 13 standard conditions, and 16 special conditions), only 2 of which pertain to sex offender registration.    A4-A6.    If the jurisdictional test in *Piasecki* were applied to Rule 11 proceedings, district courts would have to explain all such conditions as part of their guilty plea colloquies, since they are "imposed pursuant to the judgment." *Piasecki*, 917 F.3d at 166.  That is not what the law requires.

[9] Crocker's sexual registration requirements are no more burdensome than his standard conditions of supervised release.  Once released from prison, he must "report to the probation office" within "72 hours" of his release.  A5 (condition 1).  After he initially reports, he will have to continue to report as instructed.  A5 (condition 2).  Crocker will not be able to leave the district without permission.  A5 (condition 3).  He may only live at a place "approved by the probation officer," and must notify the officer "at least 10 days" before making a change.  A5 (condition 5).  He must allow the probation officer to visit his home "at any time."  A5 (condition 6).  He must maintain full-time employment and notify his probation officer within 10 days if he wishes to change jobs.  A5 (condition 7).  And so on.  A5-A6.

(describing supervised release as a "a deprivation of one's liberty imposed as a punitive measure for a bad act") (citation omitted). A district court need not explain such conditions to a defendant prior to accepting his guilty plea.

For all of these reasons, the District Court did not err in its Rule 11 colloquy. But even if this Court were to assume otherwise, Crocker cannot demonstrate that such error was plain. As set forth above, there are no cases from this Court or any other Court of Appeals holding that a District Court must explain sex offender registration requirements to a defendant as part of a Rule 11 colloquy. Thus, a failure to do so cannot be a plain or obvious error under current law. *See United States v. Price*, 13 F.3d 711, 721 (3d Cir. 1994) (concluding that if there is "no case" extending a proffered legal rule to the circumstance at issue, "it follows" that there is no plain error); *see also United States v. Chau*, 426 F.3d 1318, 1322 (11th Cir. 2005) ("[W]here the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it.") (citation and quotation omitted).

## B. Crocker's Argument Likewise Fails Because He Cannot Demonstrate That but for the Alleged Rule 11 Error He Would Have Gone to Trial

Even if Crocker could establish the first two prongs of plain error, he fails to prove the third. To be entitled to relief, Crocker must demonstrate

that his "substantial rights" were affected. *United States v. Dixon,* 308 F.3d 229, 234 (3d Cir. 2002). In the context of an alleged Rule 11 error, this requires him to "prove that, were it not for the plain error committed by the District Court at the time of the plea," he "would have pled not guilty." *Id.*

This standard requires "strenuous exertion to get relief." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004). This is because the "finality of guilty pleas" has "particular importance" in our criminal justice system. *Id.* Thus, a defendant must do more than make after-the-fact allegations that he "*might* have not pled guilty." *Dixon*, 308 F.3d at 234 (emphasis in original). To prevail, Crocker must credibly allege that he "*would have* entered a different plea." *United States v. Knobloch*, 131 F.3d 366, 370 (3d Cir. 1997) (finding no plain error in the district court's description of the essential elements of an offense given defendant's failure to claim that he "*would have* entered a different plea" had court "correctly described" those elements) (emphasis in original). And there must be affirmative evidence supporting such a claim in the record. *Dixon*, 308 F.3d at 235.

Crocker neither acknowledges this standard nor tries to meet it. There is nothing in his brief alleging that he "would have pled not guilty" but for

the alleged Rule 11 error he raises on appeal. *Id.* at 234. This is as telling as it is fatal. *Id.*

Nor is there anything in the record to establish that "but for" the alleged Rule 11 error, Crocker's "choice to plead guilty would have been any different." *Id.* at 235. This Court's reasoning in *Dixon* is instructive in this regard. There, the district court erred in informing the defendant of the statutory maximum penalty he faced for his offense. *Id.* at 234. Nevertheless, this Court declined to find plain error because the record revealed "many reasons" why the defendant "would have pled guilty even if he had been informed of the correct statutory maximum he faced." *Id.* at 235. In particular, the government agreed to forgo additional charges that would have subjected the defendant to substantially higher penalties, and the evidence of the defendant's guilt was substantial. *Id.* at 235-36. Such is the case here.

Similar to *Dixon*, the government's evidence in this case was overwhelming. Videos recovered from his cell phones, as well as a Dropbox cloud account in his name, conclusively demonstrated that Crocker produced and kept child pornography of his preteen daughters. PSR ¶¶ 12-34. These films depict Crocker engaging in sexual conduct with his children – including oral sex and masturbation – as well as him directing them to pose in

revealing positions so that he could obtain close-ups of their naked vaginas. *Id.* Crocker is easily identifiable as the producer of these videos because he chose to star in them himself, displaying his face for anyone to see. *Id.* ¶¶ 21, 23, 28, 29, 34. And in a number of others, his daughters address him as "Daddy" while he holds the camera. *Id* ¶¶ 21, 30, 32. The FBI found additional evidence of Croker's sexual interest in child pornography on his home computer, including child pornography images and videos of other children; Internet artifacts consistent with using Dropbox to obtain child pornography; and Google searches and URLs consistent with searching for child pornography resembling what he produced himself. *Id.* ¶¶ 24-25. Moreover, after Crocker's arrest, he confessed to the lion's share of this unspeakable conduct in a post-*Miranda* interview. *Id.* ¶¶ 15-18. With all of this in mind, it is difficult to understand what Crocker "might ever have thought he could gain by going to trial." *Dominguez Benitez*, 542 U.S. at 85.

Further, as in *Dixon*, Crocker accepted a guilty plea that substantially reduced his potential penalty. If convicted at trial of all three counts of the Superseding Indictment, Crocker would have faced a statutory maximum penalty of 80 years. *See supra* note 2 and accompanying text. And since the applicable Sentencing Guidelines track the statutory maximum, his advisory term of imprisonment would likewise have been 80 years. PSR ¶ 132.

Crocker avoided all of this by accepting a plea to one count of Production of Child Pornography, which capped his prison exposure at 30 years, reduced his advisory term of imprisonment to the same period, and still permitted him to argue for a sentence as low as the statutory minimum of 15 years. A96 (plea agreement); PSR ¶ 132 (advisory Guideline term).

Based on the evidence in this case, no reasonable person would have risked an additional 50 years of imprisonment to avoid registering as a sex offender. *Compare United States v. Simpkins*, 67 F. App'x 704, 709 (3d Cir. 2003) (not precedential) (rejecting defendant's post-sentencing claim that but for Rule 11 error he would have gone to trial because no "reasonable person would risk" 16 years of additional prison exposure under the circumstances). If Crocker were to claim otherwise now, it would ring hollow. Indeed, Crocker was repeatedly put on notice of his mandatory registration requirements – both during his guilty plea and at sentencing – yet never raised a peep about them below.

The plea agreement itself gave Crocker fair warning that he would be required to register as a sex offender as a condition of supervised release. Two paragraphs in the plea agreement are devoted to this subject, with the first line stating that the "defendant understands that, by pleading guilty, he will be required to register as a sex offender upon his release from prison as

a condition of supervised release." A101-102.  At the plea hearing, Crocker represented, under oath, that he had reviewed these provisions.  A63-64 (oath), A66 (defendant agreeing that prior to signing plea agreement he had "reviewed it and its terms").  And when summarizing the agreement, the prosecutor specifically called attention to these "sex offender registration requirements," which the defendant acknowledged were part of the agreement he reached with the government.[10]  A69.  At no point did Crocker question any of this, or otherwise indicate that registering as a sex offender was important to him.

At sentencing, Crocker was twice reminded that he would have to register as a sex offender, yet never claimed surprise.  First, the PSR summarized the plea agreement, including the paragraph where "Mr. Crocker agreed he understood he will be required to register as a sex offender

---

[10] The contents of the plea agreement, as well as the prosecutor's specific reference to them, are important factors for the Court to consider here.  As this Court said when confronting similar facts in *United States v. Henry*, "[w]e do not see how substantial rights could be deemed affected by the fact that the court did not mention the minimum term of supervised release inasmuch as the term was set forth in the plea agreement which Henry signed on the very day he pleaded guilty."  893 F.2d 46, 48 (3d Cir. 1990).  It is true that the defendant in *Henry* was represented by counsel during the plea hearing.  But while Crocker elected to proceed *pro se* on the morning of trial, he was represented by counsel prior to that.  Br. 2, 4; A87 (appointing defense counsel on February 5, 2019).  The same attorney acted in a standby capacity at the Rule 11 hearing, and participated in the discussions that led to the plea agreement in this case.  A62-64.

upon his release from prison as a condition of supervised release." PSR ¶ 10;

A16. Crocker indicated that he reviewed the PSR (A16), but did not object to

this provision – despite making "clarifications" to other paragraphs. A24-

26. Second, as part of a request for a downward variance, his counsel made

specific reference to the fact that he would be "required to live as a registered

sex offender":

> As Your Honor knows, he will essentially be required to live as a
> registered sex offender probably at the highest tier in terms of
> public reporting once he's released from incarceration. That will
> certainly affect his ability to move about freely. It will certainly
> affect his, you know, ability to participate in certain types of jobs
> and professions and will not make life easy for him.

A34-35. Despite all of this, Crocker never cried foul: he never moved to

withdraw his plea or otherwise claim that his guilty plea was involuntary.

This alone demonstrates that, regardless of his alleged Rule 11 violation, he

would have pleaded guilty anyway. *See United States v. Vaval*, 404 F.3d 144,

152 (2d Cir. 2005) ("Where a defendant, before sentencing, learns of

information erroneously omitted in violation of Rule 11 but fails to attempt

to withdraw his plea based on that violation, there can be no reasonable

probability that, but for the Rule 11 violation, he would not have entered the

plea.") (cleaned up); *see also United States v. Alvarado-Casas*, 715 F.3d 945,

954-55 (5th Cir. 2013) (declining to find plain error based on district court's

incorrect recitation of the statutory maximum penalty where defendant

accepted a favorable plea agreement and never moved to "withdraw his plea after the PSR made him aware of his true sentencing exposure"); *United States v. Brown*, 586 F.3d 1342, 1346 (11th Cir. 2009) (same).

For these reasons, even if the Court were to assume that the District Court committed an "error" that was "plain," Crocker cannot establish that he would have done anything other than plead guilty. He has suffered no prejudice and his conviction should be affirmed.

### C. For Similar Reasons, Crocker Fails to Show that Any Error Seriously Affected the Fairness, Integrity or Public Reputation of Judicial Proceedings

For reasons that are much the same, Crocker cannot establish that any error "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Dixon*, 308 F.3d at 235-36 (cleaned up). The evidence against Crocker was overwhelming. He received a substantial benefit by pleading guilty. And there is nothing in the record to establish that he would have not pleaded guilty but for his claim of error. These are not circumstances where the Court should exercise its discretion to vacate his conviction. *Id.* (declining to exercise plain error discretion where the evidence of defendant's guilt was "overwhelming" and defendant received a substantial benefit by pleading guilty).

## III.    THE WITHIN-GUIDELINE SENTENCE IMPOSED BY THE DISTRICT COURT WAS SUBSTANTIVELY REASONABLE

### Standard of Review

This Court applies an abuse of discretion standard when reviewing a sentence for substantive reasonableness.  *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc).  The burden rests on the party challenging the sentence to show that it was unreasonable, and this Court affords due deference to the district court's judgment.  *Id.* at 567-68.

### Argument

Crocker challenges his 30-year sentence as substantively unreasonable.  Br. 29-36.  To succeed, he must establish that "no reasonable sentencing court would have imposed the same sentence on [him] for the reasons the district court provided."  *Tomko*, 562 F.3d at 568.  This is a high bar.  District courts have "broad latitude in sentencing," which the Court of Appeals may not "second guess."  *United States v. Levinson*, 543 F.3d 190, 195-96 (3d Cir. 2008).  Thus, it is only the "rare case" where "no acceptable reasoning can justify a given sentence."  *Id.* at 195.  This is not one of them.

Here, the District Court imposed a sentence within the advisory range recommended by the Sentencing Guidelines.  As the Supreme Court has explained, this Court may presume this sentence to be reasonable.  *Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Handerhan*, 739

F.3d 114, 119-20 (3d Cir. 2014). This is because "by the time an appeals court is considering [the] sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case." *Rita*, 551 U.S. at 347 (emphasis in original). "That double determination significantly increases the likelihood that the sentence is a reasonable one." *Id.*

This rationale applies with particular force to this case. But for the statutory maximum, the Sentencing Guidelines would have called for a sentence of life imprisonment.[11] A48; PSR 132. And with good reason. As the District Court observed, Crocker's actions were "just about as bad as it gets," and "among the two or three worst types of criminal conduct" it had seen during its years on the bench. A49. Therefore, a sentence of 30 years was necessary to reflect the seriousness of the offense, promote respect for the law, deter others, protect the public, and provide just punishment. A50, A53. The District Court explained its rationale in detail:

- Crocker subjected his own daughters to some of "the most horrendous criminal acts that one human being can commit against another." A50-51.

---

[11] In fact, this was a "rare" instance where the gravity of Crocker's conduct resulted in an offense level that was literally off of the chart. PSR ¶ 77. After all of the relevant enhancements were applied, Crocker's offense level was calculated to be 45. *Id.* ¶ 76 This is higher than the Sentencing Table extends. *Id.* ¶ 77.

- He did so when these girls were "very young" and when they had no ability to defend themselves. A50-51. There "could not have been more vulnerable victims." A51.

- Crocker "groomed his daughters for sexual favors" and "actively directed" them in the videos that he made. A52.

- His conduct was "longstanding," and stretched out over at "least two years and possibly five or six years." A52.

- After his arrest, Crocker attempted to blame his daughters for his criminal conduct. A53.

- His sexual interest in children, coupled with his demonstrated willingness to act on those desires, posed a "continuing danger" to the public. A54-55.

For all of these reasons, the District Court sentenced Crocker to the "maximum penalty" that the law allowed. A53.

Crocker's primary complaint on appeal is that the district court gave "absolutely no weight" to his alleged bases for a downward variance – namely his personal history and characteristics, employment, and the significant time he spent in pretrial detention. Br. 31-32. But the District Court discussed all of these factors, including his "difficult upbringing," his "mental and emotional health issues," that he "completed his GED while detained," endured a "lengthy period of pretrial detention," and had "significant employment" prior to his arrest. A54-56. Therefore, as defense counsel conceded below, the District Court gave "meaningful consideration" to all of these arguments. A58. That is all that is required. *Tomko*, 562 F.3d at 568.

A district court's "failure to give mitigating factors the weight a defendant contends they deserve does not make a sentence substantively unreasonable."[12] *United States v. Seibert*, 971 F.3d 396, 402 3d Cir. 2020) (cleaned up).

In any event, to prevail Crocker must show that "no other court would impose a similar sentence." *Handerhan*, 739 F.3d at 124. This he cannot do. In cases involving similar conduct, this Court has affirmed sentences equal

---

[12] Crocker does not argue that the District Court committed procedural error by failing to "meaningfully consider" his sentencing arguments. Br. 14, 29 (arguing that his sentence was "*substantively* unreasonable") (emphasis added). This is for good reason. As set forth herein, the District Court gave meaningful consideration to all of the relevant factors set forth at 18 U.S.C. § 3553(a). And Crocker acknowledged as much at sentencing:

> THE COURT:  Is there any issue you believe you have raised to which I may not have given meaningful consideration?
>
> . . . .
>
> MR. CIPPARONE:   No, Your Honor.

A58.  Thus, Crocker waived the right to pursue such an argument on appeal – both because he failed to timely object below, as well as the fact that he did not advance it in his opening brief. *See United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) (failure to timely object to a sentence on procedural grounds constitutes waiver and subjects the claim to plain error review); *Khan v. Att'y Gen.*, 691 F.3d 488, 495 n.4 (3d Cir. 2012) ("[A]n issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court.") (citation and quotation omitted).

to (and much greater than) that imposed here. *See*, *e.g.*, *Seibert*, 971 F.3d at 398, 401-02 (affirming 30-year sentence for defendant who used the Internet to persuade two teenage girls to provide sexually explicit photos of themselves); *United States v. Larkin*, 629 F.3d 177, 179, 194-97 (3d Cir. 2010) (affirming 30-year sentence and upward departure for mother who traded visual depictions of her nude daughters to known pedophiles); *United States v. Stull*, 760 F. App'x 109, 111, 113-14 (3d Cir. 2019) (not precedential) (affirming sentence of over 338 years for defendant who sexually assaulted his adopted daughter for years and created videos of this activity). Indeed, Crocker cites no authority, and the government has found none, where this Court has found a within-Guideline sentence to be substantively unreasonable in a production of child pornography case.[13] There is no basis for this to be the first.

---

[13] Crocker cites 2021 statistics from the Sentencing Commission to demonstrate that his sentence is above average compared to other "sexual abuse" offenders. Br. 33-35. General statistics such as these are of limited value, as they contain no information about the particulars of each defendant's conduct, his criminal history, or the applicable Sentencing Guidelines. *See United States v. Irving*, 554 F.3d 64, 76 (2d Cir. 2009) (noting that such averages are "unreliable" since they "do not reflect the enhancements or adjustments for the aggravating or mitigating factors that distinguish individual cases") (cleaned up).

# CONCLUSION

For the reasons stated above, the government respectfully requests that the judgment of the District Court be affirmed.

Respectfully submitted,

DAVID C. WEISS
United States Attorney

JESSE S. WENGER
Assistant United States Attorney
Chief of Appeals

By:  */s Shawn A. Weede*
Shawn A. Weede
Assistant United States Attorney

United States Attorney's Office
1313 N. Market Street, Suite 400
Wilmington, DE  19801
(302) 573-6277

## COMBINED CERTIFICATIONS

### 1. **CERTIFICATE OF BAR MEMBERSHIP**

The undersigned is a federal lawyer exempt from the Court's membership requirements.

### 2. **CERTIFICATE OF WORD COUNT**

The undersigned certifies that this brief contains 9,727 words, exclusive of tables, certifications and addenda, and therefore complies with the limitation on length of a brief stated in Federal Rule of Appellate Procedure 32(a)(7)(B).

### 3. **CERTIFICATE OF SERVICE**

I hereby certify that this brief has been served on the Filing User identified below through the Electronic Case Filing System:

Rocco C. Cipparone, Jr., Esq.
Law Offices of Rocco C. Cipparone, Jr.
205 Black Horse Pike
Haddon Heights, NJ 08035

### 4. **CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEF**

The undersigned certifies that the PDF electronic copy of this brief and the hard copies of this brief are identical.

5. **CERTIFICATE OF VIRUS CHECK**

The undersigned certifies that a virus check was performed on this brief using McAfee Endpoint Security.

*/s/Shawn A. Weede*
Shawn A. Weede
Assistant United States Attorney

Date:   August 5, 2022